596 So.2d 1008 (1992)
Robert Brian WATERHOUSE, Appellant,
v.
STATE of Florida, Appellee.
No. 76128.
Supreme Court of Florida.
February 20, 1992.
Rehearing Denied May 7, 1992.
*1010 Stephen B. Bright and Clive A. Stafford Smith, Atlanta, Ga., for appellant.
Robert A. Butterworth, Atty. Gen., and Candance M. Sunderland, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
We have on appeal an order of the circuit court imposing a sentence of death upon Robert Brian Waterhouse for the murder of Deborah Kammerer. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
The facts surrounding this murder were recited in our opinion:
On the morning of January 3, 1980, the St. Petersburg police responded to the call of a citizen who had discovered the dead body of a woman lying face down in the mud flats at low tide on the shore of Tampa Bay. An examination of the body revealed severe lacerations on the head and bruises around the throat. Examination of the body also revealed  and this fact is recited not for its sensationalism but because it became relevant in the course of the police investigation  that a *1011 blood-soaked tampon had been stuffed in the victim's mouth. The victim's wounds were such that they were probably made with a hard instrument such as a steel tire changing tool. Examination of the body also revealed lacerations of the rectum. The cause of death was determined to have been drowning, and there was evidence to indicate that the body had been dragged from a grassy area on the shore into the water at high tide. The body when discovered was completely unclothed. Several items of clothing were gathered from along the shore at the scene.
The body showed evidence of thirty lacerations and thirty-six bruises. Hemorrhaging indicated the victim was alive, and defense wounds indicated she was conscious, at the time these lacerations and bruises were inflicted. Acid phosphatase was found in the victim's rectum in sufficient amount to strongly indicate the presence of semen there. Also, the lacerations in this area indicated that the victim had been battered by the insertion of a large object. The medical examiner was also able to determine that at the time of the murder the victim was having her menstrual period.
Waterhouse v. State, 429 So.2d 301, 302-03 (Fla.), cert. denied, 464 U.S. 977, 104 S.Ct. 415, 78 L.Ed.2d 352 (1983). This Court affirmed Waterhouse's conviction of first-degree murder and the original sentence of death imposed upon him. Id. We subsequently ordered a new sentencing proceeding because the trial judge did not instruct on and the jury did not consider nonstatutory mitigating evidence. Waterhouse v. State, 522 So.2d 341 (Fla.), cert. denied, 488 U.S. 846, 109 S.Ct. 123, 102 L.Ed.2d 97 (1988). Upon resentencing, the jury recommended the death penalty by a vote of twelve to zero and the trial court again imposed a sentence of death.[1]
We address first Waterhouse's claim that he was denied the right to counsel by defense counsel's refusal to make closing argument at the resentencing hearing. Waterhouse also alleges in this claim that the trial court erred by refusing to allow him to consult with counsel before requiring him to present his own closing argument.
An awareness of the events preceding the closing argument is necessary to an understanding of this claim. At the outset, it should be noted that several lawyers had previously withdrawn from representing Waterhouse because of his refusal to cooperate with them. During the proceedings below, Waterhouse and his counsel, Mr. Hoffman, began to differ about trial strategy. Prior to the resentencing hearing, Hoffman sought to withdraw because Waterhouse did not wish him to put on any evidence in mitigation and insisted that he present a lingering doubt defense. Because this Court has held that lingering doubt is not an appropriate nonstatutory mitigating circumstance,[2] Hoffman recognized that he could not ethically pursue this course of action. Hoffman protected the record to make clear that Waterhouse desired to present such a defense.
During the resentencing hearing, Waterhouse made various complaints about Hoffman, but it was clear that he was not seeking to represent himself. The court found Waterhouse's accusations against Hoffman to be unfounded and observed:
THE COURT: Well, I'm not going to let him control this case by discharging a lawyer that's appointed for him on the eve of the trial. It is obvious to me that he has been doing this over the years *1012 purely for the purpose of delay, and I'm not going to let that happen.
As far as I'm concerned, Mr. Hoffman, you're on the case. I know it's tough for you. If he wants to dictate the terms of your representation and make it impossible for you to present a defense in mitigation, that's his choice. If he's done that, he has only himself to blame.
In the middle of the resentencing hearing, Hoffman advised the court that Waterhouse once again was complaining about his representation because he had not gone far enough in trying to relitigate the guilt issue.[3] The court observed that Hoffman was providing effective representation. However, the court stated that if Waterhouse insisted, he would permit him to take over the trial but would keep Hoffman present so as to provide legal advice if requested. The court then asked Waterhouse whether or not he was discharging Hoffman and proceeding on his own:
THE DEFENDANT: Will he remain as advisory counsel?
THE COURT: What?
THE DEFENDANT: Will he remain as advisory counsel? That will be all?
THE COURT: That's right. But he won't be participating. If you have a question, you'll take it up with him, but you're on your own.
MR. CROW [Prosecutor]: I think what he's trying to indicate is he doesn't want Mr. Hoffman in an advisory capacity.
THE COURT: I'll have him here available. He doesn't have to consult with him. He doesn't have to talk to him. If he doesn't have any questions to ask him, then obviously his advisory capacity is for naught; but he will be available to him. He will not be participating in the trial and Mr. Waterhouse will be handling the rest of this case on his own.
THE DEFENDANT: What I'm actually trying to get at is will he have to be present in the courtroom?
THE COURT: Doesn't have to be if you don't want him. We can have him sit outside. That's kind of a stupid place to put him if he's going to try and advise you on what he heard in here.
THE DEFENDANT: Doesn't seem to matter where he is. We'll let it go.
THE COURT: I'm sorry?
THE DEFENDANT: Excuse me. Let it go.
THE COURT: Let it go. In other words, he will continue as your lawyer?
THE DEFENDANT: The railroad train is running, your Honor.
THE COURT: I take it that you are accepting him as your lawyer?
THE DEFENDANT: Excuse me?
THE COURT: Pardon?
THE DEFENDANT: I didn't hear what you said.
THE COURT: He is your lawyer, is that correct?
THE DEFENDANT: Not by much.
THE COURT: Over your objection.
THE DEFENDANT: On paper. He's doing nothing, your Honor.
THE COURT: I didn't ask you that. Answer the question, please.
THE DEFENDANT: I would respectfully refuse.
THE COURT: Okay. Bring in the jury. Mr. Hoffman continues to remain as the lawyer.
At the close of the State's testimony, Hoffman made clear that Waterhouse refused to allow him to put on any mitigating evidence. Hoffman also indicated that Waterhouse wanted to address the jury in closing argument. The judge advised Waterhouse that this would not be a good idea because much of what he proposed to say would probably be stricken on objection. However, the judge said that if Waterhouse wished to do so, he would permit him to make the closing statement, even though Hoffman remained in the case. This is reflected in the following colloquy:
THE COURT: Let me interrupt you for a minute. Here's what I'm going to do. Just so he'll have no complaint. You're still in the case. He can say *1013 anything he wants. I'll rule on the objections.
MR. HOFFMAN: I think that's fair, Judge.
THE COURT: It's my observation that he is not best served by doing that, but if the result is adverse to him, he can't be heard to complain I didn't allow him to make a statement.
MR. HOFFMAN: It may take a little preparation time, I would assume.
THE COURT: You can come back at one o'clock. We've still got to resolve the instructions.
After the recess and the jury charge conference, Hoffman announced that Waterhouse would be making the closing argument. The prosecutor then presented his closing argument. Thereafter, the court took a ten-minute recess. When the trial resumed, Waterhouse stated that he would like Hoffman to make the closing argument. Hoffman responded that Waterhouse was still insisting that he make a lingering doubt argument and that he felt that he could not do this because it would be unethical. The following colloquy then occurred:
MR. HOFFMAN: The posture I've decided to take on this, right or wrong, is that he can't now force me to make what I feel is an ineffective representation in closing argument by reneging on his previous statements.
And in light of the fact that he's not allowed me to put on any mitigation case, he's absolutely not allowed any mitigation case.
So, there really isn't much to talk about. And rather than do that and make a half hearted attempt and skirt the issue of ethical bounds with regard to whether or not I can talk about the guilt issue, I would rather leave him to do what he said he wants to do.
And if that turns out to be wrong and he turns out to get another trial 
THE COURT: Well, you can always talk about the seriousness of the recommendation and it requires not taking it light.
That certainly is a matter that can be argued to the jury.
I mean, that's 
MR. HOFFMAN: That's about the only thing; I mean, just get up and ask the jury what I did in opening statement; I can reiterate everything I said in opening.
THE COURT: The question to you, Mr. Waterhouse, is do you want Mr. Hoffman to make the closing argument within the confines of the penalty, not the guilt or innocence of a homicide?

MR. WATERHOUSE: Well, your Honor, Mr. Hoffman, as you know, and I have had a very  you can't even call it a rocky relationship, it's not even that good.
He's been to see me once 
THE COURT: Well, I'm not  I've heard this for the last year.
MR. WATERHOUSE: I have not had a chance to sit down with him and explain to him the things that I want to put forth in mitigation at the closing.
He's only been over there once, and all we discussed 
THE COURT: Well, the description of your relationship with Mr. Hoffman is one of your own doing, not of his.
MR. HOFFMAN: Judge, what he's doing now is back to what we already talked about, that I didn't want mitigating things put before the jury.
I mean, people were here to do it. The four items that were in the previous case 
THE COURT: Well, I'm going to ask this question one last time.
If I don't get an answer, you're proceeding on your own, Mr. Waterhouse.
Do you want Mr. Hoffman to make the closing statement for you within the confines of the recommendation of either death or life imprisonment or not, and not make an argument on your guilt or innocence of the homicide; yes or no?
MR. WATERHOUSE: Your Honor, the problem is  see, I am not an attorney, I do not know the law fully, what you're talking about.

*1014 That's why I need to get together 
THE COURT: Yes or no?
MR. WATERHOUSE:  with Mr. Hoffman in order so we could prepare for this, so he could tell me that this is admissible and this is not.
We haven't got together on it.
THE COURT: Yes or no?
MR. WATERHOUSE: No.

THE COURT: Bring in the jury.
(Emphasis added.)
We do not find that Waterhouse was denied his right to counsel by these actions. Waterhouse initially indicated on the record that he wished to make the closing argument. He reneged on that at the last possible minute. At that point, Hoffman did not refuse to make closing argument. He was simply unwilling to make the argument that Waterhouse demanded because he felt it would be unethical. Waterhouse rejected the choice of a closing argument by counsel confined to the appropriate issues. Under the facts of this case we do not find that Waterhouse was denied his right to counsel. "[A] defendant may not manipulate the proceedings by willy-nilly leaping back and forth between the choices [of self-representation and appointed counsel]." Jones v. State, 449 So.2d 253, 259 (Fla.), cert. denied, 469 U.S. 893, 105 S.Ct. 269, 83 L.Ed.2d 205 (1984). We refuse to permit an intransigent defendant to completely thwart the orderly processes of justice.
Nor do we find error in the trial court's refusal to permit Waterhouse to consult with his counsel before making the decision to make his own closing argument. It is obvious from the colloquies quoted above that this matter had been under consideration for an extended period of time, and Waterhouse had already consulted with Hoffman about this. Ironically, as things worked out, Waterhouse gave a closing argument in which he was given great latitude on what to say, including matters bearing on guilt or innocence. Clearly, the trial court, the prosecutor, and his own attorney bent over backwards in trying to give Waterhouse the benefit of every legal right to which he was entitled.
Waterhouse also argues that, in the event he is deemed to have asserted his right to self-representation insofar as closing argument is concerned, the trial court failed to conduct the inquiry required by Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Faretta requires that once a defendant asserts the right of self-representation, the court must make an appropriate inquiry to determine whether the defendant knowingly and intelligently waived the right to counsel. Normally, this requires a waiver hearing to insure that the defendant understands the disadvantages of self-representation. Fitzpatrick v. Wainwright, 800 F.2d 1057 (11th Cir.1986). However, under the facts of this case we find that the standards of Faretta were met despite the lack of a final hearing.
The trial judge warned Waterhouse on numerous occasions of the dangers in representing himself. The judge informed Waterhouse that he would be held to applicable procedural and evidentiary rules if he acted as his own counsel. From Waterhouse's conduct throughout the proceedings below, it is apparent that he was thoroughly knowledgeable about the proceedings against him. He filed motions in his own behalf with citation to supporting cases. During hearings on defense counsel's motion to withdraw and Waterhouse's motion to dismiss counsel, Waterhouse addressed the court at length, citing and discussing cases. He gave the court the names of witnesses he wished to call and indicated what their testimony would be. He took an active part in his defense during the resentencing hearing. He presented his counsel with questions for witnesses and raised objections to various testimony. He was obviously aware of the defenses available to him. He was allowed to represent himself only at the very end of the proceedings in closing argument. Defense counsel assisted him in closing argument by responding to the prosecutor's objections and by consulting with Waterhouse when Waterhouse so requested. Finally, Waterhouse's manipulation of the proceedings and his attempts to delay show an obvious understanding of the proceedings *1015 against him. Under these facts, we find that the requirements of Faretta were met. See Fitzpatrick, 800 F.2d 1057 (Faretta requirements met despite lack of hearing where defendant manipulated the proceedings, had knowledge of possible defenses, had contacted numerous attorneys prior to trial, and understood the nature of the charges against him).
Waterhouse next asserts that he was improperly precluded from challenging the State's claim that the murder occurred during the commission of a sexual battery.[4] Waterhouse argues that, in effect, the trial court directed a verdict against him on the issue of the sexual battery by refusing to allow evidence on the issue of guilt of the murder.
The judge appropriately precluded Waterhouse from presenting evidence questioning his guilt. However, Waterhouse was not precluded from challenging the State's evidence that a sexual battery occurred or from presenting evidence that a sexual battery did not occur. Our review of the record indicates that the court afforded Waterhouse and his counsel considerable leeway in cross-examining State witnesses on the evidence of sexual battery. The jury was instructed on the elements of a sexual battery and informed that each aggravating factor must be established beyond a reasonable doubt. We find no error.
Waterhouse claims that he was denied the right to counsel because of his counsel's conflict of interest. The alleged conflict arose from the difficulties between Waterhouse and his counsel. This claim is not supported by the record. Although a conflict of interest may be present where counsel's interests are inconsistent with those of his client, there was no such conflict here. It is apparent from the record that counsel's interest was in presenting the best possible case for Waterhouse. Any conflict between them was attributable solely to Waterhouse's own contumacious behavior and not to any competing interest of his counsel.
Waterhouse next argues that the trial court erred in refusing to answer the following questions raised by the jury during deliberations:
(1) If he's sentenced to life, when would he be eligible for parole?
Does the time served count towards the parole time?
(2) If paroled from [Florida] would the defendant then be returned to [New York] to finish his sentence there?
The trial judge informed the jury that they would have to depend on the evidence and instructions.
With regard to the first question, the jury instructions adequately informed the jury that a life sentence carried a minimum mandatory sentence of twenty-five years. See King v. Dugger, 555 So.2d 355, 359 (Fla. 1990). With regard to the remaining questions, it cannot reasonably be argued that the jury would have been less likely to recommend the death penalty had it been informed that Waterhouse would receive credit for the ten years he had already served on death row and that the court could not know whether Waterhouse would be extradited to New York once he was paroled in Florida. This is not a situation in which the defendant was prohibited from presenting evidence that might cause the jury to decline to impose the death penalty. See McCleskey v. Kemp, 481 U.S. 279, 304, 107 S.Ct. 1756, 1773, 95 L.Ed.2d 262 (1987) (state may not narrow sentencer's discretion to consider relevant evidence that might cause it to refuse to impose the death penalty). The trial court did not abuse its discretion in refusing to answer the jury's questions.
Waterhouse also argues that the prosecutor acted improperly and misled the jury when he suggested in closing argument that fifteen years of imprisonment (deducting the ten years Waterhouse had already served) was not sufficient punishment *1016 for this crime. Because no objection was made to this comment, the issue has not been preserved for review. Teffeteller v. State, 495 So.2d 744, 747 (Fla. 1986). Any error in this remark is not fundamental so as to obviate the need for an objection.
Waterhouse next claims that the State improperly introduced hearsay evidence regarding his prior second-degree murder conviction in New York. Retired Detective Hawes, one of the officers who investigated the New York murder, testified about the details of the New York murder. The trial court overruled defense counsel's and Waterhouse's objections to the testimony.
Details of prior felony convictions involving the use or threat of violence to the victim are admissible in the penalty phase of a capital trial. Rhodes v. State, 547 So.2d 1201, 1204 (Fla. 1989); Tompkins v. State, 502 So.2d 415, 419 (Fla. 1986), cert. denied, 483 U.S. 1033, 107 S.Ct. 3277, 97 L.Ed.2d 781 (1987). Such testimony "assists the jury in evaluating the character of the defendant and the circumstances of the crime so that the jury can make an informed recommendation as to the appropriate sentence." Rhodes, 547 So.2d at 1204. Further, hearsay testimony is admissible, provided that the defendant has a fair opportunity to rebut it. § 921.141(1), Fla. Stat. (1989); Tompkins, 502 So.2d at 419. Defense counsel was afforded the opportunity to cross-examine Detective Hawes. We find no error in the admission of this testimony.
Waterhouse also claims that the trial court erred in allowing the State's pathology expert, Dr. Wood, to explain the New York autopsy report. Dr. Wood testified regarding the autopsy she performed on Deborah Kammerer. The State recalled Dr. Wood later to explain the New York autopsy report to the jury. Waterhouse argues that the State should have been required to call the person who prepared the New York autopsy report. Defense counsel cross-examined Dr. Wood and brought out the fact that she did not prepare the autopsy report and had not consulted with the person who prepared the report. The autopsy report was presented at the original penalty phase hearing, so defense counsel should have been well aware of its existence. Under these facts, we find no error in permitting Dr. Wood's testimony on the New York autopsy report. Even if the admission of this testimony was error, it was clearly harmless.
Next, Waterhouse claims that the trial court erred in refusing to exclude prospective juror Marshall for cause, thus requiring him to use his last peremptory challenge. Waterhouse argues that Marshall's responses during voir dire show that he would automatically impose the death penalty on anyone convicted of first-degree murder. According to the record, Marshall said that he would only vote to impose the death penalty if it were "justified" and that he would weigh the aggravating and mitigating factors to determine whether the death penalty should be imposed. Marshall met the test of juror competency. See Lusk v. State, 446 So.2d 1038, 1041 (Fla.), cert. denied, 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984) (juror is competent if he can lay aside any bias or prejudice and render verdict solely on the evidence presented and the court's instructions). The trial judge did not abuse his discretion in refusing to excuse Marshall for cause. Penn v. State, 574 So.2d 1079, 1080-81 (Fla. 1991); Pentecost v. State, 545 So.2d 861 (Fla. 1989).
Waterhouse challenges the admission of certain incriminating statements that he claims were obtained in violation of his right to counsel. While we rejected this same argument on direct appeal, Waterhouse v. State, 429 So.2d at 304-06, he now relies on the recent case of Minnick v. Mississippi, ___ U.S. ___, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990). Waterhouse failed to object to the admission of these same statements at resentencing and therefore he has waived this claim for purposes of this appeal. The admission of the statements at the resentencing phase was not fundamental error which would excuse the failure to object to their admission. In any event, the statements could have had no *1017 significant impact on the jury's sentencing recommendation because Waterhouse's guilt of the murder was not at issue. See Teffeteller, 495 So.2d at 747. Thus, at most, the admission of these statements would be harmless error.
Waterhouse claims that the prosecutor improperly commented on his failure to take the stand during the sentencing hearing.[5] The complained-of remark is not fairly susceptible of being interpreted as a comment on silence. Even if it could be so interpreted, defense counsel failed to object to the comment and thus the issue is waived. Clark v. State, 363 So.2d 331, 333 (Fla. 1978), receded from on other grounds, State v. DiGuilio, 491 So.2d 1129 (Fla. 1986). Waterhouse also argues that the prosecutor falsely told the jury that the previous sentencing jury did not know that about the prior murder and that the prosecutor diluted the jury's sense of responsibility for its recommendation. Defense counsel did not object to these comments and therefore the issues have been waived for appeal. Teffeteller, 495 So.2d at 747.
Waterhouse claims that the jury instructions failed to specify that each juror should make an individual determination as to the existence of any mitigating circumstance. These issues have been waived because counsel did not object to the instruction. Walton v. State, 547 So.2d 622 (Fla. 1989), cert. denied, 493 U.S. 1036, 110 S.Ct. 759, 107 L.Ed.2d 775 (1990). In any event, Florida law does not require such an instruction.
We summarily reject Waterhouse's claim that the court improperly admitted gruesome photographs of the victim.
Finally, Waterhouse challenges the aggravating factors found by the court below. We previously rejected on direct appeal two of the arguments Waterhouse raises in this appeal. For that reason we reject his claim that the evidence does not support a finding that the crime was especially heinous, atrocious, or cruel. Similarly, we reject the argument that the trial court improperly doubled aggravators in finding, as two separate aggravators, that Waterhouse had been sentenced to life imprisonment for second-degree murder and that he was on parole at the time of the murder. See Waterhouse v. State, 429 So.2d at 307.
Waterhouse also argues that the finding that the crime was committed in the course of a sexual battery was tainted by the court's refusal to permit defense evidence on the sexual battery. Because we have rejected Waterhouse's claim that he was prohibited from presenting or challenging evidence relating to the sexual battery we find this claim to be without merit.
We agree with Waterhouse that the evidence is insufficient to establish two of the aggravating factors found by the court below. There is insufficient evidence to support the finding that the murder was committed for the purpose of avoiding or preventing arrest. We further find that the evidence does not show the heightened premeditation and calculation necessary to establish beyond a reasonable doubt that the murder was committed in a cold, calculated, and premeditated manner. Nevertheless, we find beyond a reasonable doubt that the elimination of these two aggravating factors would not have resulted in a life sentence in light of the remaining valid aggravating circumstances and the lack of mitigating circumstances.[6]Hamblen v. *1018 State, 527 So.2d 800 (Fla. 1988); Bassett v. State, 449 So.2d 803 (Fla. 1984).
Accordingly, we affirm the sentence of death.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, GRIMES and HARDING, JJ., concur.
KOGAN, J., concurs in part and dissents in part with an opinion, in which BARKETT, J., concurs.
KOGAN, Justice, concurring in part, dissenting in part.
I find the following portions of the record dispositive of the present appeal:
MR. WATERHOUSE: I would like Mr. Hoffman to [make the closing argument]; he's more articulate than myself.
We seem to be at odds.
THE COURT: He says he wants you to do it. Are you refusing?
MR. HOFFMAN: Yes. Aside from for the record, I think that's what I have to do.
What he wants me to do, I feel might be totally unethical, to go into the guilt phase issue.
And he refused to put on anything in mitigation.
Therefore, I don't know of  I don't have anything in mitigation to talk about.
And I can get up there and speak about things unethical and this happened before he told me what to do.
And I have gone on for what he told me to do, and we may have to do this again, but we may not.
THE COURT: Well, this judge won't. All right, then, he proceeds on his own.
In the same exchange, the trial court asked defense counsel Hoffman if he was prepared to make the closing argument in the event this should become necessary. Defense counsel responded in the negative:
Judge, I think I would take the posture that even if he would ask me to do it now, based on his previous instructions, that I couldn't do it.
And now we're riding the same horse. He told me not to do things.
And I can't jump, and I would not attempt; I would rather go with no attempt.
However, the prosecutor was troubled by this exchange and asked that further inquiry be made before the jury was brought back into the courtroom. At this point, Waterhouse exhibited considerable confusion regarding the options before him. He continued to state that he wanted the jury to be told of his claim of innocence, but also informed the court that he did not fully understand the law. Waterhouse specifically told the trial court that, if Hoffman would not make the closing argument, Waterhouse needed time both to consult with counsel and prepare to make the argument himself.
The following exchange occurred:
THE COURT: Well, I'm going to ask this question one last time.
If I don't get an answer, you're proceeding on your own, Mr. Waterhouse.
Do you want Mr. Hoffman to make the closing statement for you within the confines of the recommendation of either death or life imprisonment or not, and not make an argument on your guilt or innocence of the homicide; yes or no?
MR. WATERHOUSE: Your Honor, the problem is  see, I am not an attorney, I do not know the law fully, what you're talking about.

That's why I need to get together 
THE COURT: Yes or no?
MR. WATERHOUSE:  with Mr. Hoffman in order so we could prepare for *1019 this, so he could tell me that this is admissible and this is not.
We haven't got together on it.
THE COURT: Yes or no?
MR. WATERHOUSE: No.
THE COURT: Bring in the jury.
(Emphasis added.)
Based on the foregoing, I cannot agree with the majority's conclusion that "Hoffman did not refuse to make closing argument." Majority op. at 1014. The records reflects the opposite. Because a defendant cannot be denied counsel  even a confused and equivocating defendant like Waterhouse  I believe the record compels a finding that the Sixth Amendment of the United States Constitution and article I, section 16 of the Florida Constitution have been violated here.
In particular I cannot ignore the portions of the exchange emphasized above, which clearly show that the trial court refused to give Waterhouse even a rudimentary opportunity to prepare to make the closing argument himself. The trial court would not even permit Waterhouse the opportunity to consult with counsel as to what argument he might make on his own. This occurred despite Waterhouse's express request for time to consult with Hoffman. Thus, the trial court clearly was endorsing Hoffman's refusal to make argument, was forcing Waterhouse to serve as his own counsel, and then simultaneously deprived Waterhouse of any opportunity whatsoever to prepare in a meaningful way.
This was plain error. The right to counsel is one of the most fundamental of rights granted to a person accused of crimes. U.S. Const. amend. VI; art. I, § 16, Fla. Const. Likewise, due process requires that a defendant not be deprived of a reasonable and meaningful opportunity to prepare for court, even when acting pro se. U.S. Const. amend. XIV; art. I, § 9, Fla. Const. The trial court below, the defense counsel, and now this Court have denied Waterhouse his rights.
Moreover, even if Waterhouse's statements are construed as a request for self-representation, they at best were equivocal statements. Florida law is settled that self-representation cannot be authorized  much less imposed upon a defendant by judicial fiat  unless the request is unequivocal and a proper hearing is conducted to gauge the defendant's age, mental status, lack of knowledge or experience in criminal proceedings, and whether the waiver is knowing and intelligent. Hardwick v. State, 521 So.2d 1071, 1074 (Fla.), cert. denied, 488 U.S. 871, 109 S.Ct. 185, 102 L.Ed.2d 154 (1988); see Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). No such hearing occurred here, as the majority concedes. Majority op. at 1014. Thus, the trial court's determination of this matter was error, both procedurally and substantively.
Like the majority, I have no doubt that Waterhouse exhibited a lack of cooperation in this case. However, the trial court went too far in penalizing Waterhouse by denying him his right to counsel prior to the closing arguments; and defense counsel clearly exacerbated this error by announcing he was refusing to make argument for his client and was not prepared to make any sort of closing argument. No matter how contumacious a defendant may be, he may not be denied the right to counsel and counsel may not refuse to provide representation. U.S. Const. amends. V, VI; art. I, §§ 9, 16, Fla. Const.
Moreover, I cannot give credence to Hoffman's assertions that his actions were so constrained by Waterhouse that he was unable to develop a closing argument. The Florida Rules of Professional Conduct give considerable latitude to defense counsel to control the technical and legal tactical issues of the case. R. Regulating Fla. Bar 4-1.2(a) & 4-1.2 (comment on scope of representation) (1991). Hoffman could have exercised this prerogative had he so chosen, thus developing some sort of closing argument on behalf of his client. The very fact that Hoffman sat mute while Waterhouse rambled through an unskilled and confused closing argument could be considered a damning indictment in the eyes of jurors; and for this reason alone, I believe Hoffman did not meet his obligations to his *1020 client and assisted in depriving his client of the right to counsel and due process.
In my five years on this Court, I have read countless records in which defense counsel had far less to argue than did Hoffman, yet counsel still developed a moving and legally sound closing statement. In many instances, such attorneys have persuaded more than a few jurors to vote for a recommendation of life. I see no reason why Hoffman could not have done the same when his client asked him in open court to make the closing argument. For example, Hoffman could have argued against the existence of all or some of the aggravating factors, two of which this Court today finds inappropriate. The failure even to notice the inapplicability of these two aggravating factors, much less argue against them to judge and jury, reveals Hoffman's claims in court as an unacceptable excuse.
I also do not believe Hoffman would have violated any ethical rule by developing and arguing a case for mitigation, since an attorney retains substantial control over the means used in achieving the client's objectives. R. Regulating Fla. Bar 4-1.2(a) & 4-1.2 (comment on scope of representation) (1991). Accordingly, I believe that Waterhouse is entitled to a new penalty phase, and I would so order.
However, I agree with the majority that the evidence was insufficient to support two of the aggravating factors. Cold, calculated premeditation is improper here because there is insufficient evidence of a careful plan or prearranged design to effect this murder. See Rogers v. State, 511 So.2d 526 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988).
As to witness elimination, the trial court expressed its opinion that this factor is present in virtually every case. This is not the law. Like cold, calculated premeditation, the factor of witness elimination focuses on a specific kind of heightened criminal intent. Witness elimination must include "very strong" evidence that the intent underlying the murder was to avoid arrest or detention. Armstrong v. State, 399 So.2d 953 (Fla. 1981). Thus, there must be evidence beyond a reasonable doubt that a conscious purpose of the murder was to eliminate a witness or otherwise to avoid arrest or detention. It is not enough that the murder merely incidentally eliminates the victim as a witness, without evidence beyond a reasonable doubt of an intent to do so, since all murders by definition achieve this result. Thus, I find insufficient evidence in this record that Waterhouse's crime met the requirements described here.
BARKETT, J., concurs.
NOTES
[1] The judge found the following aggravating factors: (1) the defendant was under a sentence of lifetime parole at the time of the murder; (2) the defendant had been previously convicted of second-degree murder; (3) the defendant was engaged in the commission of a sexual battery against the victim at the time of the murder; (4) the defendant committed the murder to eliminate her as a witness; (5) the crime was especially wicked, evil, atrocious, or cruel; (6) the murder was committed in a cold, calculated, and premeditated manner. The judge found no mitigating circumstances.
[2] See King v. State, 514 So.2d 354 (Fla. 1987), cert. denied, 487 U.S. 1241, 108 S.Ct. 2916, 101 L.Ed.2d 947 (1988); Aldridge v. State, 503 So.2d 1257 (Fla. 1987).
[3] Actually, the court, without objection by the prosecution, permitted Hoffman broad leeway in asking many questions which tended to bear on the issue of guilt.
[4] The State introduced evidence of the sexual battery in order to establish this as an aggravating factor. See § 921.141(5)(d), Fla. Stat. (1989).
[5] The prosecutor made the following argument at closing:

Whether you have the defendant's blood or whether you have the victim's blood; the victim and the defendant's blood are almost the same thing; there is only one enzyme that separates them.
Well, have you heard any testimony that Robert Waterhouse got beaten with a tire iron in his own vehicle? Absolutely not.
There is absolutely no evidence that blood came from anywhere [except] Deborah Kammerer's skull.
[6] The original trial judge found five of the six aggravating circumstances found by the judge on resentencing. The aggravating factor of cold, calculated, and premeditated was not presented to the jury in the original penalty phase proceeding. On direct appeal, this Court questioned the evidence in support of the witness-elimination aggravator. Nevertheless, the Court found the death sentence valid even without that aggravating factor because of the other aggravating circumstances and the lack of mitigating circumstances. Although we later vacated Waterhouse's death sentence in order to allow him to present nonstatutory mitigating evidence, Waterhouse refused to allow the presentation of mitigation evidence at resentencing. Thus, this case stands in the same posture as it stood on direct appeal when the death sentence was upheld.