698 So.2d 1178 (1996)
Jerry Layne ROGERS, Petitioner,
v.
Harry K. SINGLETARY, etc., Respondent.
No. 86768.
Supreme Court of Florida.
November 27, 1996.
Rehearing Denied September 11, 1997.
Jerrel Phillips, Tallahassee; and John G. Buchanan, III, Timothy C. Hester, William J. Shieber, Benedict M. Lenhart and Michael S. Long of Convington & Burling, Washington, D.C., for Petitioner.
Robert A. Butterworth, Attorney General and Mark S. Dunn, Assistant Attorney General, Tallahassee, for Respondent.
*1179 SHAW, Justice.
Jerry Layne Rogers petitions this Court for a writ of habeas corpus reversing his conviction and sentence on the ground that his appellate counsel was ineffective. We have jurisdiction. Art. V, § 3(b)(9), Fla. Const. We deny the petition.
In 1984, Rogers was convicted of firstdegree murder and sentenced to death for killing the manager of a Winn-Dixie supermarket during an attempted robbery. In 1987, this Court affirmed his conviction and sentence, and in 1989, Rogers filed a 3.850 motion for post-conviction relief which was denied. See Rogers v. State, 630 So.2d 513 (Fla.1993); Rogers v. State, 511 So.2d 526 (Fla.1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988). In his appeal of his 3.850 motion, Rogers raised a claim pursuant to Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), but this Court never reached its merits. The Court reversed the denial of the motion on procedural grounds and remanded the case for a new evidentiary hearing.
The state argues that Rogers' petition is time-barred by the two-year limitation imposed for rule 3.850 motions. We disagree. The time limitations set forth in rule 3.850(b) do not apply to writs of habeas corpus; subdivision (b) addresses motions to vacate, set aside, or correct sentences and states in pertinent part:
(b) Time Limitations. A motion to vacate a sentence that exceeds the limits provided by law may be filed at any time. No other motion shall be filed or considered pursuant to this rule if filed more than 2 years after the judgment and sentence become final in a noncapital case or more than 1 year after the judgment and sentence become final in a capital case in which a death sentence has been imposed unless it alleges that
(1) the facts on which the claim is predicated were unknown to the movant or the movant's attorney and could not have been ascertained by the exercise of due diligence, or
(2) the fundamental constitutional right asserted was not established within the period provided for herein and has been held to apply retroactively.
In 1989, when Rogers filed his rule 3.850 motion, there was no time limitation for filing writs of habeas corpus. In 1994, rule 3.851(b)(2) became effective, requiring that writs be filed simultaneously with the initial brief on appeal of a 3.850 motion:
(b) Time Limitation.
....
(2) All petitions for extraordinary relief in which the Supreme Court of Florida has original jurisdiction, including petitions for writ of habeas corpus, shall be filed simultaneously with the initial brief filed on behalf of the death-sentenced prisoner in the appeal of the circuit court's order on the rule 3.850 motion.
Fla.R.Crim.P. 3.851(b)(2). Rogers filed his appeal of the 3.850 motion before the effective date of rule 3.851(b)(2); thus it did not apply and his petition is not time-barred.
In the instant petition, Rogers claims that his appellate counsel was ineffective for not raising the Faretta claim on direct appeal of his conviction and death sentence. Rogers maintains that he was permitted to represent himself at his murder trial in violation of the constitutional standard set forth in Faretta and Florida Rule of Criminal Procedure 3.111(d)(5),[1] because the court inquired only into his competence to represent himself, and neither warned him of the dangers and disadvantages of self-representation as required by Faretta, nor renewed the offer of assistance of counsel after voir dire or before the penalty phase of the proceedings as required by rule 3.111(d)(5). Rogers contends that if his counsel had raised the Faretta claim on appeal, his conviction and sentence would have been reversed. We disagree.
*1180 To determine whether appellate counsel was ineffective, our evaluation is limited to
"first, whether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and, second, whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result."
Groover v. Singletary, 656 So.2d 424, 425 (Fla.1995) (quoting Pope v. Wainwright, 496 So.2d 798, 800 (Fla.1986), cert. denied, 480 U.S. 951, 107 S.Ct. 1617, 94 L.Ed.2d 801 (1987)). Although an ineffective assistance of counsel claim is based on the premise that the omitted argument would have been meritorious if raised, the underlying legal issue is not before this Court on its merits. See Pope, 496 So.2d at 800. We address the merits of the Faretta[2] issue to the extent necessary to dispose of Rogers' claim.
Faretta requires that once a defendant asserts the right of self-representation, the court must conduct an inquiry to determine whether the defendant knowingly and intelligently waived the right to counsel. Waterhouse v. State, 596 So.2d 1008, 1014 (Fla.), cert. denied, 506 U.S. 957, 113 S.Ct. 418, 121 L.Ed.2d 341 (1992). The Faretta Court stated:
Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open."
Faretta, 422 U.S. at 835, 95 S.Ct. at 2541 (quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 279, 63 S.Ct. 236, 241-42, 87 L.Ed. 268 (1942)). This Court has recognized the significance of a defendant's waiver of the right to be represented by counsel. See, e.g., State v. Young, 626 So.2d 655 (Fla.1993)(requiring a reversal when there is not a proper Faretta inquiry); Smith v. State, 407 So.2d 894 (Fla.1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2260, 72 L.Ed.2d 864 (1982) (upholding Smith's waiver because he was literate, competent, understanding, and apprised of the danger of what he was doing).
In Waterhouse, this Court found that despite the lack of a final waiver hearing to ensure that Waterhouse understood the disadvantages of self-representation, the Faretta standards were met based on guidance from Fitzpatrick v. Wainwright, 800 F.2d 1057 (11th Cir.1986). Waterhouse, 596 So.2d at 1014. In Fitzpatrick, the court stated:
The recorded colloquies between the judge, the prosecutor and Fitzpatrick in this case did not expressly address Fitzpatrick's understanding of the risks of self-representation. However, the case law indicates that, while a waiver hearing expressly addressing the disadvantages of a pro se defense is much to be preferred, it is not absolutely necessary. The ultimate test is not the trial court's express advice, but rather the defendant's understanding. If the trial record demonstrates that Fitzpatrick's decision to represent himself was made with an understanding of the risks of self-representation, the knowing, intelligent, and voluntary waiver standard of the Sixth Amendment will be satisfied. So long as the record establishes that Fitzpatrick "`[knew] what he [was] doing and his choice [was] made with eyes open,'" the trial judge's decision to allow Fitzpatrick to represent himself will be upheld.
Fitzpatrick, 800 F.2d at 1064 (citations omitted).
In Waterhouse, this Court upheld the defendant's waiver because: the trial judge warned Waterhouse that he would be held to applicable procedural and evidentiary rules; Waterhouse was thoroughly knowledgeable about the proceedings against him; he filed motions with citation to supporting cases; he manipulated the proceedings and attempted *1181 to delay; he had knowledge of possible defenses; he had contact with numerous attorneys prior to trial; and, he understood the charges against him. Waterhouse, 596 So.2d at 1014-15; see also Hill v. State, 688 So.2d 901 (Fla. 1996) (upholding the defendant's waiver).
In the instant case, Rogers unequivocally asserted his right to represent himself. The judge advised Rogers that he should have counsel, that it would be to his advantage, and that the charge against him was first-degree murder, a capital felony. He conducted a hearing and inquired into Rogers' education and experience. Rogers had represented himself on at least four occasions, once obtaining a mistrial, once obtaining an acquittal, and once obtaining a reversal on appeal from a denial of post-conviction relief. He indicated that he recognized the severity of the charge against him and that he knew Faretta guaranteed his right to represent himself.
We agree with the Fitzpatrick court's conclusion that "while a waiver hearing expressly addressing the disadvantages of a pro se defense is much to be preferred, it is not absolutely necessary. The ultimate test is not the trial court's express advice, but rather the defendant's understanding." 800 F.2d at 1064. We find that the Faretta standards were met in the instant case because the record establishes that Rogers knew what he was doing and his choice was made with eyes open. Therefore, appellate counsel was not seriously deficient for failing to raise the Faretta claim on appeal. However, even if the failure to raise the Faretta issue amounted to a deficiency, we would find in this case that the omission did not compromise the appellate process; thus Rogers is not entitled to habeas relief.
Accordingly, Rogers' petition for writ of habeas corpus is denied.
It is so ordered.
KOGAN, C.J., and OVERTON, GRIMES, HARDING and WELLS, JJ., concur.
ANSTEAD, J., concurs with an opinion.
ANSTEAD, Judge, concurring.
I write separately only to note the unusual circumstances of this case where two (2) lawyers were appointed to represent petitioner in the trial court, not as uninvolved "standby" counsel, but rather as active and responsible co-counsel.[3] No one has asserted *1182 that the word "standby" appears anywhere in the trial court record or that this was the actual role played by counsel. Indeed, the entire penalty phase of the trial was conducted by the lawyers appointed to represent petitioner. In fact, petitioner has made a claim in pending post-conviction proceedings that his attorneys did not provide competent representation in either the guilt or penalty phases of his trial.
Since the trial court had actually provided the defendant with counsel, the court could hardly be expected to remind the defendant that he had a right to have counsel appointed for the penalty phase of his trial. Further, since counsel was not only provided during the guilt phase, but also conducted the entire penalty phase, petitioner would be hard pressed to demonstrate prejudice about not being informed of his right to the assistance of counsel in the penalty phase. In short, counsel was appointed and represented the petitioner throughout these proceedings, thereby essentially making any claim of error in failing to advise petitioner of his right to counsel at any particular stage of the proceedings moot.
NOTES
[1] Florida Rule of Criminal Procedure 3.111(d)(5) states:

(d) Waiver of Counsel.
....
(5) If a waiver is accepted at any stage of the proceedings, the offer of assistance of counsel shall be renewed by the court at each subsequent stage of the proceedings at which the defendant appears without counsel.
[2] We find no rule 3.111(d)(5) violation because the court appointed two prominent attorneys as standby counsel who appeared with Rogers at each stage of the proceedings. Rogers is not entitled to habeas relief on this issue.
[3] The public defender initially appointed to represent Rogers moved to withdraw because of a conflict. The trial court granted the motion and appointed two (2) private attorneys in the public defender's place:

THE COURT: The next step I will grant it based on the statement of the Defendant, I will grant the Motion for Leave to Withdraw.
Also, since I have reviewed the file and this is a charge of murder of the first degree, it is a capital felony, I propose, and it would be to your advantage, but that is up to you. I inquired of two experienced criminal attorneys who are not from this area who have agreed to accept an appointment, and I will allow you to consult with them before we get further into your other motions. So, for the purposes of this proceeding, I will allow the Public Defender to withdraw. I will appoint in his place instead [of] impeding a resolution of the matter, Ralph Elliott, Jr. and David Tumin to act jointly as counsel in this case and allow you to consult with them at this time to decide whether this appointment can be reconciled with your request to act pro se, because you should have counsel. I reviewed your files, and you should have counsel. You should not be in court without counsel. You are presently incarcerated at this time, and you should have counsel. I made these arrangements, and they are experienced criminal attorneys.
Subsequently, after a recess in which the attorneys visited with the defendant, the following exchange took place:
THE COURT: We are back on Mr. Rogers' case.
MR. WHITEMAN: That is Case Number 83-1440-CF.
THE COURT: Let's inquire first of counsel. Has counsel consulted and appointment confirmed or not confirmed?
MR. TUMIN: Your Honor, forgive the slight laryngitis. We have conferred with the accused and he has certain terms of our coming in, as he put it, as co-counsel. We have conferred at some length. If it is [acceptable] to the Court, I think Captain Elliott and I would be amenable to assist.
THE COURT: All right. I think he has the constitutional rights to be his own counsel, plus we have to conduct a separate hearing on that, and I supposeand I understand he wants to assist in the case and, alsowell, maybe you could outline it for me, it would be a little easier, you or Mr. Rogers.
MR. ELLIOTT: As we proceed along, we have agreed that we will confer as to who will conduct what, and primarily he has had experience. He has tried cases before and I have no objection to his participation in it, if the Court would allow it. As we proceed, we will decide as we go along how it is to be handled.
THE COURT: You will be assisting?
MR. ELLIOTT: Participating.
THE COURT: No decision will be made without Mr. Roger's approval or something of that nature?
MR. TUMIN: Without his participation in the decision, yes, sir.
Finally, after an extended discussion, the trial court asked both appointed lawyers to place their qualifications as criminal defense lawyers on the record and they did so.