991 So.2d 984 (2008)
Robert Winston MORGAN, Appellant,
v.
STATE of Florida, Appellee.
No. 4D06-4210.
District Court of Appeal of Florida, Fourth District.
October 1, 2008.
*985 Carey Haughwout, Public Defender, and John Pauly, Jr., Assistant Public Defender, West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Mark J. Hamel, Assistant Attorney General, West Palm Beach, for appellee.
STEVENSON, J.
Robert Winston Morgan appeals his criminal convictions and sentences for attempted second degree murder and aggravated assault with a deadly weapon. He claims that the trial court conducted an inadequate Faretta inquiry prior to permitting him to elect self-representation. We agree and reverse for a new trial.
On February 6, 2006, privately-retained counsel, John A. Garcia, Esq., was substituted for the public defender as the defendant's counsel of record. On October 11, 2006, when the case was called for trial, defense counsel advised the court that the defendant "would like to relieve me of my duties." After being sworn, the defendant testified that Garcia had not returned his calls or visited him in jail until the previous Wednesday. "So, to me he ain't representing me to the fullest, like with the discovery, with the depositions."
The trial court then advised:

*986 THE COURT: . . . You can fire your counsel, if you hired him. You can do that. You have the right to do that. I have no obligation to appoint anybody for someone who has the ability to hire his or her own attorney. But if I discharge Mr. Garcia for the reasons you have just stated, you are faced with going to trial with no lawyer.
And, you alone have an absolute right, if you choose, to represent yourself. That's all you have to tell me.
Now, if your goal . . . is the assumption by discharging Mr. Garcia, I would therefore continue this case to give you an opportunity to hire somebody else, you are wrong; I will not.
The reasons you just gave me do not justify postponing this case. If you choose to fire Mr. Garcia, that's your absolute right. We can call up the jury in a couple of minutes and we can proceed to trial.
....
THE DEFENDANT: I don't have money for a lawyer and my family went out of the way to get him. I feel like I am going to trial by ambush. That's the way I feel.
THE COURT: Well, I don't know what that means. It sounds like it's a nice thing to say, Mr. Morgan, but trial by ambushyou hired Mr. Garcia in February. This charge emanated some time prior to February, almost a year prior, and you had been on probation for a period of time. None of that had anything to do with Mr. Garcia. You had the benefit of having two sets of lawyers over the course of . . . this case.
I don't know what you are asking me to do. If you are requestingwhat are you asking me [to] do, so I understand it accurately. If it's to discharge Mr. Garcia, that's your call. You can fire him. Go ahead. If you are about to ask me to postpone this case.
THE DEFENDANT: I ain't trying to get you to postpone.
THE COURT: You want to go without a lawyer?
THE DEFENDANT: No, ma'am, I can't go without a lawyer.
THE COURT: Mr. Morgan, do you understand the words I am uttering, in other words, do you understand English?
THE DEFENDANT: Yes, ma'am.
THE COURT: Is there anything about what I have just said that you did not understand?
THE DEFENDANT: No, ma'am.
THE COURT: Fair enough.
Now, what are you asking me to do?
THE DEFENDANT: Nothing. I will go with Mr. Garcia. I don't get a fair chance.
After a five-minute break for consultation with counsel, the defendant declared:
THE DEFENDANT: I want to dismiss him.
THE COURT: Okay. So you are going to proceed without a lawyer, sir?
THE DEFENDANT: That's the only way, Your Honor.
THE COURT: Well, Mr. Garcia, I guess you have just been fired.
Now, I guess that means you get to leave. Do you have all the documents you can provide to your former client?
MR. GARCIA: I just handed him the packet of discovery that I received from the State.
Thereafter, the trial court conducted a limited Faretta inquiry, wherein it was revealed that the defendant had only an eighth-grade education. The defendant also expressed difficulty in understanding big words and made clear that he had *987 never been to trial on a criminal charge. So far as the record reflects, he was totally unsophisticated in the law. The trial judge did not warn the defendant of the dangers and disadvantages of self-representation. She did warn him, though, that he would have to follow the rules, whether he knew them or not.
The following morning, before jury selection, the defendant attempted to change his mind and asked for his lawyer back, but the trial court refused. The defendant later declined Garcia's assistance as standby counsel after he had already picked a jury on his own.
The defendant was found guilty of attempted second degree murder and one count of aggravated assault with a deadly weapon, though he was acquitted on the other aggravated assault with a deadly weapon count. He was sentenced to twenty-five years on the attempted murder charge and five years, consecutive, on the aggravated assault with a deadly weapon charge.
The standard of review for trial court decisions involving withdrawal or discharge of counsel is abuse of discretion. Guardado v. State, 965 So.2d 108, 113 (Fla. 2007); see also Reddick v. State, 937 So.2d 1279, 1283 (Fla. 4th DCA 2006) ("The standard of review applicable to trial court rulings on motions seeking the right to self-representation in a criminal trial is abuse of discretion."). Where a defendant demands self-representation, the trial court's ruling "turns primarily on an assessment of demeanor and credibility," and consequently, "its decision is entitled to great weight and will be affirmed on review if supported by competent substantial evidence." Potts v. State, 718 So.2d 757, 759 (Fla.1998).
With certain limitations, the defendant in a criminal trial has the right to choose self-representation. Faretta v. California, 422 U.S. 806, 834, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The critical limitation on the decision to waive counsel is that the decision must be "knowing and intelligent." Edwards v. Arizona, 451 U.S. 477, 482, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); Faretta, 422 U.S. at 835, 95 S.Ct. 2525. Whether this standard is met in a given case is a fact-specific determination which must take into account all of the surrounding circumstances, including the background, experience and conduct of the accused. Edwards, 451 U.S. at 482, 101 S.Ct. 1880.
Where a criminal defendant makes an unequivocal demand to represent himself, a trial court is obligated to conduct a Faretta inquiry. Smith v. State, 956 So.2d 1288, 1289 (Fla. 4th DCA 2007). Although there are cases where the defendant has proven himself so sophisticated in his knowledge of the courts and the law that a formal Faretta inquiry is not required, this is clearly the exception and not the rule. See Waterhouse v. State, 596 So.2d 1008, 1014 (Fla.1992); Butler v. State, 767 So.2d 534, 539 (Fla. 4th DCA 2000). The defendant at bar had never been to trial on a criminal charge and was otherwise totally unsophisticated in matters of the law. Clearly, a Faretta inquiry was required in this case. While the trial judge appeared to attempt a limited Faretta inquiry, she did so only after she had allowed the defendant to fire his counsel. The trial court did not inquire until after Garcia had already turned his file over to the defendant and was told that he could leave. We believe this is backwards.
In conducting a Faretta hearing, the trial court is obligated to inquire about the defendant's age, education, and legal experience. See Potts, 718 So.2d at 760; Bowen v. State, 677 So.2d 863, 866 (Fla. 2d DCA 1996), approved, 698 So.2d 248 (Fla. *988 1997). While the defendant in this case was not of tender years, the trial court belatedly learned that he had only an eighth-grade education, expressed difficulty in understanding big words, and had never been subjected to a criminal trial. So far as the record reflects, he did not take part in his own defense in the past and was totally unsophisticated in the law.
The biggest problem here is that the trial court failed to warn the defendant of the dangers and disadvantages of self-representation. See Faretta, 422 U.S. at 835, 95 S.Ct. 2525 (holding that the defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that `he knows what he is doing and his choice is made with eyes open'") (quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942)); Reddick, 937 So.2d at 1284 (stating that, as part of the Faretta inquiry, "the trial court can and should inform the defendant of the potential perils and pitfalls of self-representation").
The Florida Supreme Court has stated that the focus is not on the "specific advice rendered by the trial courtfor there are no `magic words' under Farettabut rather on the defendant's general understanding of his or her rights." Potts, 718 So.2d at 760. The court added, however, that "`[i]t [is] enough for [the defendant] to be alerted generally to the difficulties of navigating the legal system. . . .'" Id. (quoting Hill v. State, 688 So.2d 901, 905 (Fla. 1996)). In this case, it does not appear that the trial judge did even this, certainly not until after she had already permitted defense counsel to be fired. By then, it was apparently too late (as demonstrated by her refusal to allow the defendant to change his mind about self-representation the following morning).
The cases that have approved Faretta inquiries where the trial judge did not warn the defendant of the perils and pitfalls of self-representation have all involved sophisticated defendants, mostly of the "jailhouse lawyer" variety. See, e.g., Rogers v. Singletary, 698 So.2d 1178, 1181 (Fla.1996) (involving defendant who had represented himself on at least four occasions, once obtaining a mistrial, once obtaining an acquittal, and once obtaining a reversal on appeal from a denial of post-conviction relief); Waterhouse, 596 So.2d at 1014 (involving defendant who filed motions on his own behalf with citations to supporting cases and argued motions to court, at length, citing and discussing case law); Baggett v. State, 687 So.2d 934, 935 (Fla. 4th DCA 1997) (involving defendant who filed numerous pro se motions and waivers, citing case law, and had represented himself in other proceedings, including one before that trial judge); Bowen, 677 So.2d at 864 (involving defendant who had graduated from high school, worked in prison law library for two years and had represented himself in two prior criminal proceedings). The defendant in this case has none of these characteristics, making all of these cases distinguishable.
Florida Rule of Criminal Procedure 3.111 is entitled "Providing Counsel to Indigents." Thus, it is not clear that it would apply to the current facts (at least directly) since Garcia was retained, not appointed. However, that rule is quite mandatory in its language as to what must occur before a defendant may waive counsel:
A defendant shall not be considered to have waived the assistance of counsel until the entire process of offering counsel has been completed and a thorough inquiry has been made into both the accused's comprehension of that offer and the accused's capacity to make a knowing and intelligent waiver. Before *989 determining whether the waiver is knowing and intelligent, the court shall advise the defendant of the disadvantages and dangers of self-representation.

Fla. R.Crim. P. 3.111(d)(2) (2007) (emphasis added).
The Florida Supreme Court has published a model Faretta colloquy. Amendment to Fla. Rule of Criminal Procedure 3.111(d)(2)-(3), 719 So.2d 873, 876 (Fla. 1998). This court has summarized the model colloquy as follows:
To that end, our supreme court has published a model colloquy wherein the judge is to (1) inquire concerning the defendant's age, education, his ability to read and write, any mental or physical conditions, and whether anyone has threatened him concerning the decision to proceed without counsel; (2) advise the defendant that a lawyer can assist him in calling witnesses and presenting evidence, advise him regarding whether he should testify, is familiar with the rules of evidence, can ensure accurate jury instructions are given, and preserve errors for appeal; and (3) warn the defendant he will not receive special treatment and will be limited by the resources available to him while in custody.
Smith, 956 So.2d at 1289-90. The trial court in this case only belatedly inquired about the defendant's age, education and the like, gave the defendant absolutely no advice about the advantages of having a lawyer, and only belatedly warned him that he would have to follow the rules, whether he knew them or not.
The defendant relies on Smith. We agree that it is the closest case to the current facts. In Smith, this court stated that "a trial judge is not required to follow the letter of the model colloquy," but found that the limited inquiry made by the trial judge in this case was "insufficient to demonstrate that [the defendant] understood his rights and the consequences of his decision to proceed pro se." 956 So.2d at 1290. This court characterized the trial judge's colloquy as follows:
All in all, the judge's inquiry was limited to asking Smith about his experience with the criminal justice system, whether Smith believed he was capable of representing himself, whether he would be ready for trial on the scheduled date, and whether he would "behave like a gentleman." Smith's responses demonstrate that, while he has been involved with the criminal justice system since he was a juvenile, he had had only one jury trial, wherein he was represented by counsel and found not guilty. Nothing in the exchange between Smith and the court indicated Smith had any real understanding of what he was up against in making the decision to proceed pro se.
Id. Accordingly, this court reversed for a new trial. We follow Smith.
To be clear, we do not fault the trial court for refusing to allow the defendant to change his mind about self-representation on the morning trial was to begin. He had gone back and forth, and a defendant may not manipulate the proceedings by "willy-nilly" leaping back and forth between the choices of self-representation and legal counsel. Waterhouse, 596 So.2d at 1014 (citing Jones v. State, 449 So.2d 253, 259 (Fla.1984)). While we do not really believe that the defendant in this case was intentionally trying to manipulate the system, we think it would be within the trial court's discretion to so conclude.
The State places great reliance on the fact that the defendant declined Garcia's assistance as standby counsel after he had already picked a jury on his own. We are unsure as to what the State believes this proves. We do not think that it proves the defendant knew the risks of self-representation *990 when he discharged Garcia the day before, which is the issue. Because the trial court did not make an adequate Faretta inquiry by failing to assure that the defendant realized the benefits of counsel that he was waiving, reversal for a new trial is required.
Reversed and Remanded.
WARNER and MAY, JJ., concur.