# Third District Court of Appeal

## State of Florida

Opinion filed August 15, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-243
Lower Tribunal No. 12-14320
_____

**Lukace Kendle,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Dava Tunis, Judge.

Carlos J. Martinez, Public Defender, and Andrew Stanton and Harvey J. Sepler, Assistant Public Defenders, for appellant.

Pamela Jo Bondi, Attorney General, and G. Raemy Charest-Turken, Assistant Attorney General, for appellee.

Before ROTHENBERG, C.J., and SUAREZ and LINDSEY, J.J.

ROTHENBERG, C.J.

Lukace Kendle ("Kendle") appeals from a final judgment of conviction and sentence for second-degree murder and attempted second-degree murder. Kendle contends that the trial court failed to conduct a sufficient Faretta[1] inquiry, and that the trial court and the State made inappropriate comments on his exercise of his fundamental rights to remain silent and to represent himself. Upon review of the lengthy record in this case, including the multiple Faretta inquiries conducted by the trial court, we reject both arguments and, therefore, affirm.

## BACKGROUND

Kendle was charged with shooting two men in the parking lot of Club Lexx a/k/a Club Ro-lexx, a strip club where Kendle was employed as a security guard on, or about, June 1, 2012. Kijuan Lamar Byrd died from his injuries. Michael Smathers survived, but is paralyzed from the waist down. At all relevant times, Kendle claimed that the shooting was justified under Florida's Stand Your Ground Law, section 776.032, Florida Statutes (2011).

At the outset, Kendle was represented by privately retained counsel, Simon Steckel. At Kendle's request, however, attorney Steckel was allowed to withdraw on April 23, 2013. Thereafter, Kendle's family notified Kendle and the trial court that they wished to retain Abe Bailey to represent Kendle. Although Kendle expressed a desire to represent himself, he agreed to meet with Mr. Bailey.

_____

[1] Faretta v. California, 422 U.S. 806 (1975).

2

However, two days later, another attorney, Carlos Gonzalez, entered an appearance on Kendle's behalf. A few months later, on June 21, 2013, during a status conference, Kendle indicated that he wished to discharge Mr. Gonzalez and represent himself.

At the hearing, Mr. Gonzalez raised concerns regarding Kendle's competency. Kendle objected to being evaluated for competency, stated that he would not participate in any competency evaluations, and advised the trial court that he had an associate's degree in electronics engineering and, as such, he was more than capable of representing himself. Nevertheless, the trial court ordered that Kendle be evaluated. Kendle refused to cooperate, and his refusal delayed the proceedings for several months.

On November 20, 2013, the trial court conducted a hearing to address Kendle's competency. At the hearing, the trial court reviewed the evaluating doctors' reports. Specifically, the trial court noted that Dr. Ralph Richardson was unable to render an opinion because Kendle had refused to participate in the evaluation, and that Dr. Rebecca Diaz Quintana had opined that even though Kendle had refused to cooperate, in her opinion, Kendle was incompetent to proceed. At the hearing, the trial court explained to Kendle that in order to make an informed finding as to his competency and Kendle's ability to represent himself, Kendle would need to cooperate with the two doctors so that he could be properly

3

evaluated. Kendle agreed to cooperate and to undergo the competency evaluations.

At a status conference held on December 5, 2013, Kendle's counsel informed the trial court that Dr. Richardson had conducted a lengthy interview with Kendle and was now prepared to find that Kendle was competent. However, before Kendle could be evaluated by Dr. Quintana, he began threatening correctional officers, and as a result, he was moved to a restricted section of the jail and Dr. Quintana was not permitted to see him. Although the trial court expressed concerns that Kendle might be attempting to manipulate the system, the trial court adjudicated Kendle incompetent on December 12, 2013.

After a period of hospitalization, and without being medicated, Kendle was found competent. Thereafter, the trial court conducted multiple Faretta inquiries during various stages of the proceedings. After each inquiry, the trial court found that Kendle was competent to proceed and granted Kendle's request to represent himself. Despite Kendle's objection, the trial court appointed stand-by counsel and stand-by counsel was present during all phases of the proceedings. Kendle, however, never sought guidance from stand-by counsel despite the trial court's constant reminders of his presence and willingness to assist. At the conclusion of the trial, the jury returned a verdict of guilty as to both counts. Kendle was sentenced to life imprisonment with a twenty-five-year minimum mandatory term for the second-degree murder of Mr. Byrd, and thirty years with a twenty-five-year

minimum mandatory term for the attempted second-degree murder of Mr. Smathers.

## STANDARD OF REVIEW

A trial court's decision regarding the withdrawal or discharge of counsel is reviewed for an abuse of discretion.  Guardado v. State, 965 So. 2d 108, 113 (Fla. 2007).  Where a defendant seeks to represent himself or herself, the trial court's decision turns on "an assessment of demeanor and credibility."  Morgan v. State, 991 So. 2d 984, 987 (Fla. 4th DCA 2008) (quoting Potts v. State, 718 So. 2d 757, 759 (Fla. 1988)). A trial court's decision regarding self-representation is entitled to great weight and must be affirmed on review if supported by competent substantial evidence.  Potts, 718 So. 2d at 759.

Unpreserved challenges regarding comments made during *voir dire*, on the other hand, are reviewed for fundamental error. Bell v. State, 108 So. 3d 639, 651 (Fla. 2013).  Kendle's challenges to the comments made by the State and the trial court were not preserved.  Thus, the proper standard of review is for fundamental error.

## ANALYSIS

### I.  The Faretta Inquiries

Kendle contends that the trial court failed to make sufficient inquiries, as required by Faretta, before permitting him to represent himself.  We disagree.  The

5

record clearly reflects that the trial court diligently and painstakingly colloquied Kendle regarding his demand to represent himself on numerous occasions and at every critical stage of the proceedings. The record also clearly reflects that Kendle knowingly, intelligently, and freely waived his right to counsel.

In Faretta, the United States Supreme Court held that an accused has the right to represent himself so long as his waiver of his right to counsel is knowingly and intelligently made. In other words, the defendant must be aware of what he or she is doing, and his or her choice must be made with eyes open. Id. at 835 (citing Adams v. United States, *ex rel.* McCann, 317 U.S. 269, 279 (1943)). The Florida Supreme Court has adopted the inquiry articulated by the Faretta Court in the Amendment to Florida Rule of Criminal Procedure 3.111(d) (2)-(3), App. B, 719 So. 2d 873 (Fla. 1998), which states in part:

> (2) A defendant shall not be deemed to have waived the assistance of counsel until the entire process of offering counsel has been completed and a thorough inquiry has been made into both the accused's comprehension of that offer and the accused's capacity to make a knowing and intelligent waiver. Before determining whether the waiver is knowing and intelligent, the court shall advise the defendant of the disadvantages and dangers of self-representation.

If the trial court determines that the defendant has made a knowing and intelligent waiver of his right to counsel, then the trial court cannot deny the defendant's unequivocal request to represent himself or herself, regardless of the defendant's lack of legal skills or the complexity of the case. Rule 3.111(d)(3).

6

The competence that is required of a defendant seeking to waive his right to counsel is the **competence to waive the right**, not the competence to represent himself. Godinez v. Moran, 509 U.S. 389, 399 (1993). In other words, the defendant need not possess the technical legal knowledge of an attorney in order to be permitted to proceed *pro se*. Hill v. State, 688 So. 2d 901, 905 (Fla. 1996).

A defendant's demand for self-representation places the trial court in a quandary, for the court must balance seemingly conflicting fundamental rights – i.e., the court must weigh the right of self-representation against the rights to counsel and to a fair trial. Potts, 718 So. 2d at 759. In order to achieve this balance, the model colloquy published by the Florida Supreme Court suggests that the trial court: (1) inquire as to the defendant's age, education, his ability to read and write, any mental or physical conditions, and whether anyone has threatened the defendant concerning the decision to proceed without counsel; (2) advise the defendant that a lawyer can assist him in calling witnesses and presenting evidence, can ensure that accurate jury instructions are given, and preserve errors for appeal; and (3) warn the defendant that he will not receive any special treatment and will be limited by the resources available to him while in custody. Smith v. State, 956 So. 2d 1288, 1289 (Fla. 4th DCA 2007) (quoting In re Amendment to Fla. R. Crim. P. 3.111(d) (2)-(3), 719 So. 2d 873, 876-77 (Fla. 1998)).

The trial court, however, is not required to follow the model colloquy word for word. See Smith, 956 So. 2d at 1290. Instead, it is sufficient for the defendant to be alerted to the general difficulties of navigating the legal system. Hill, 688 So. 2d at 905. As the Florida Supreme Court noted in Aguirre-Jarquin v. State, 90 So. 3d 593, 602 (Fla. 2009) and Porter v. State, 788 So. 2d 917, 927 (Fla. 2001), "the essence of the colloquy is to ensure the defendant makes a knowing and voluntary waiver of counsel."

Importantly, the focus is not on the "specific advice rendered by the trial court – for there are no 'magic words' under Faretta – but rather, on the defendant's general understanding of his or her rights." Potts, 718 So. 2d at 760. A review of the proceedings in this case, as summarized below, demonstrates that the trial court conducted multiple inquiries that complied with both rule 3.110(d) and Faretta.

### A. The April 4, 2014 Faretta Inquiry

After determining that Kendle had been restored to competency, and upon Kendle's reiteration of his desire to represent himself, the trial court conducted the following Faretta inquiry:

> THE COURT: What are your complaints with your defense counsel?
>
> DEFENDANT: First of all my defense counsel has been – I asked him to submit a demand in June of last year, and if he had done it in June of last year, I would have been in trial over ten months ago. This

8

way I do believe I can do it myself.

**THE COURT:** Do you understand that there [were] some things that your attorney needed to do in order to be ready for trial?

**DEFENDANT:** Yes.

**THE COURT:** You have a right to have a lawyer, you know that?

**DEFENDANT:** I also have a right to [a] Speedy Trial Demand and I have a right to represent myself.

**THE COURT:** I understand that. Do you understand [that] he is a paid lawyer, and if you cannot afford a lawyer I can appoint one for you?

**DEFENDANT:** I would like to represent myself.

**THE COURT:** That is not my question. My question is, do you understand that I have the ability to appoint a lawyer for you?

**DEFENDANT:** Yes, ma'am.

**THE COURT:** Do you want me to appoint a lawyer for you?

**DEFENDANT:** No, ma'am.

**THE COURT:** Let me explain something to you. Your lawyer can help. I have to go through this. If you don't want to go through it right now, I will reset this on another day.

**DEFENDANT:** I understand you completely.

**THE COURT:** A lawyer presents legal knowledge and experience. In reference to having counsel represent you, he has the ability to identify objections and secure favorable evidence on your behalf [and] to be present at the time of trial. Assist in obtaining pre-trial release. The lawyer's legal knowledge and expertise may favorably affect the discovery and may obtain skillful use of discovery provided. A lawyer can protect your constitutional rights and make

sure they are protected and take the proper steps to address them. A lawyer will make sure [that] the speedy trial rules and statute of limitations are enforced. A lawyer can obtain favorable evidence and introduce them [sic] in trial on your behalf. A lawyer can file the appropriate motions to exclude evidence, to suppress evidence and to dismiss or reduce the charges against you. Do you understand that is what a lawyer can do?

**DEFENDANT**:     Yes, ma'am.

**THE COURT**:     A lawyer can help you decide whether to enter a guilty plea. A lawyer can advise as to whether entering into the plea is in your best interest. A lawyer has experience in helping you work with the State and even bargain for different terms. A lawyer is advanced to the [disadvantages] as to what you say to the Court during plea, hearings, sentencing[,] or trial. Do you understand you will not get special consideration from the Court just because you want to represent yourself?

**DEFENDANT**:     Yes, ma'am.

**THE COURT**:     Do you understand how necessary a lawyer is and how he or she could help you?

**DEFENDANT**:     Yes, ma'am.

**THE COURT**:     You are currently charged with – let me see the Information. You are currently charge[d] with one count of 2nd degree murder. That is a life felony. You are looking at life in prison. And one count of attempted second degree murder. That is a 1st degree felony punishable by up to 30 years. Have you received a copy of the charges and have you had a chance to review them?

**DEFENDANT**:     Yes, ma'am.

**THE COURT**:     Do you understand the serious nature of the charges against you?

**DEFENDANT**:     Yes, ma'am.

**THE COURT:** The maximum sentence that can be imposed against you is life; do you understand that?

**DEFENDANT:** Yes, ma'am.

**THE COURT:** If you are found guilty, you may have a permanent criminal record and you may never get out of prison again; do you understand?

**DEFENDANT:** Yes, ma'am.

**THE COURT:** If you are not a citizen of the United State[s], you could be deported from this country; do you understand?

**DEFENDANT:** Yes, ma'am.

**THE COURT:** Do you understand [what] the consequences of entering a plea would be?

**DEFENDANT:** Yes, ma'am.

**THE COURT:** Do you have questions concerning the consequences of being found guilty or entering into a plea?

**DEFENDANT:** I understand completely.

**THE COURT:** Let me tell you some of the ways a lawyer can help during the course of the trial. A lawyer has experience and knowledge of the entire process. Your lawyer will argue for you during the trial and present legal argument for your defense before a jury. A lawyer's knowledge and experience may give a lawyer an advantage during the [jury] selection process on your behalf. A lawyer can call witnesses for you, question witnesses against you and present evidence on your behalf. A lawyer can advise you on whether you should testify and the consequence of that decision and what you have the right not to say; do you understand?

**DEFENDANT:** Yes, ma'am.

**THE COURT:** A lawyer that studies the rules of evidence knows

11

whatever exhibits cannot come into trial. A lawyer can make objections during trial and try to keep certain testimony and evidence being introduced at trial from coming in. Jury qualifications and a lawyer's knowledge may enhance the [jury] selection process on your behalf. A lawyer may provide assistance in charging the jury and get the complete jury members' information and present effective closing arguments on your behalf and [object to] improper argument by the prosecutors; do you understand?

**DEFENDANT:**   Yes, ma'am.

**THE COURT:**   A lawyer assures any errors are properly preserved for appellate review later by a higher court; do you understand?

**DEFENDANT:**   Yes.

**THE COURT:**   If you are convicted, a lawyer may prepare for sentencing and make sure favorable facts about you are brought to my attention for sentencing. A lawyer may make sure the Court is aware of laws available for a favorable disposition. A lawyer can make sure a proper Pre-sentence Investigation Report is prepared on your behalf. A lawyer may bring witnesses to court to testify on your behalf at sentencing. A lawyer may make sure [that] any sentence is lawfully imposed. An attorney's legal knowledge and experience may be useful in fighting and seeking release on bail pending appeal; do you understand?

**DEFENDANT:**   Yes, ma'am.

**THE COURT:**   There are certain dangers and disadvantages in self-representation, as it is almost [always] unwise to represent yourself in court. Let me tell you a few of the disadvantage[s] of representing yourself in court. Do you understand that you will not get any special treatment from the Court just because you are representing yourself?

**DEFENDANT:**   Yes, ma'am.

**THE COURT:**   Do you understand you will not be entitled to a continuance simply because you wish to represent yourself?

**DEFENDANT:** Yes, ma'am.

**THE COURT:** You will also be limited to the legal resources available to you while you are in custody; do you understand?

**DEFENDANT:** Yes.

**THE COURT:** You will not be entitled to any additional library privileges just because you are representing yourself.

**DEFENDANT:** No.

**THE COURT:** A lawyer would have fewer restrictions preserving your defense or investigating your case; do you understand?

**DEFENDANT:** Yes, ma'am.

**THE COURT:** You are not required to possess [the] legal knowledge or skills of an attorney. [But] [y]ou will be required to abide by the Rules of Criminal Law and Courtroom Procedure; do you understand that?

**DEFENDANT:** Yes, ma'am.

**THE COURT:** That took lawyers years to learn and abide by. If you demonstrate failure to abide by these rules, I may terminate your self-representation; do you understand?

**DEFENDANT:** Yes, ma'am.

**THE COURT:** Do you understand if you are disruptive in the courtroom, the Court can terminate [your] self-representation and remove you from the courtroom and, therefore, the trial continues without your presence; do you understand that?

**DEFENDANT:** Yes, ma'am – without my presence?

**THE COURT:** Yes, sir. Do you understand?

**DEFENDANT:**   Yes, ma'am.

**THE COURT:**   Do you understand your access to the assistant state attorney prosecuting you will be severely reduced compared to a lawyer who could easily pick up the phone and call the attorney?

**DEFENDANT:**   Yes, ma'am.

**THE COURT:**   Additionally, the State will not go easier on you and give you special treatment because you are representing yourself. The [State] will present the case against you as if you were an experienced lawyer; do you understand?

**DEFENDANT:**   Yes, ma'am.

**THE COURT:**   If you are convicted you cannot claim on appeal [your] lack of legal knowledge or skills. In other words, you cannot [receive] ineffective [assistance] of counsel if you represent yourself; do you understand?

**DEFENDANT:**   Yes, ma'am.

**THE COURT:**   Do you understand these advantages and disadvantages of representing yourself?

**DEFENDANT:**   Yes, ma'am.

**THE COURT:**   Do you have any questions on the dangers and disadvantages?

**DEFENDANT:**   No, ma'am.

**THE COURT:**   During the time you have been represented by counsel in this case, did you discuss this case with your attorney?

**DEFENDANT:**   Yes, ma'am.

**THE COURT:**   I need to ask you a few questions to determine if you are competent to make a knowing and intelligent waiver of counsel. How

old are you?

**DEFENDANT:** I'm 27.

**THE COURT:** Can you read?

**DEFENDANT:** Yes, ma'am.

**THE COURT:** Can you write?

**DEFENDANT:** Yes, ma'am.

**THE COURT:** Do you have any difficulty in understanding English?

**DEFENDANT:** No.

**THE COURT:** How many years in school did you complete?

**DEFENDANT:** Almost an associate's degree in electronic [engineering].

**THE COURT:** Are you currently under the influence of any alcohol or drugs?

**DEFENDANT:** No, ma'am.

**THE COURT:** Have you been diagnosed or treated for mental illness?

**DEFENDANT:** No.

**THE COURT**: May I see the evaluations? Have you seen the evaluations?

**DEFENDANT**: No, ma'am.

**THE COURT:** Would you like a moment to review them?

**DEFENDANT:** No, ma'am.

15

**THE COURT:** Dr. Quintana and [Dr.] Ruiz opine [that] he is suffering from substances [and there is a] likelihood [that] he is suffering from the mental illness bipolar or psychotic disorder. And Dr. Richardson could not obtain enough information to make that finding.

**MR. GONZALEZ:** Is that the latest?

**THE COURT:** I will review them when I make my finding. Do you have any physical problems that would hinder your self-representation in this case like hearing, speech or poor eyesight?

**DEFENDANT:** No, ma'am.

**THE COURT:** Has anyone told you not to use a lawyer?

**DEFENDANT:** No, ma'am.

**THE COURT:** Has anyone threatened you not to hire a lawyer or accept a lawyer appointed by the Court?

**DEFENDANT:** No, ma'am?

**THE COURT:** Do you understand a lawyer appointed by the Court will represent you for free?

**DEFENDANT:** Yes, ma'am.

**THE COURT:** You are entitled to fire your attorney and I can certainly appoint a different lawyer for you; do you understand?

**DEFENDANT:** Yes, I understand.

**THE COURT:** Do you wish for me to do that at this time?

**DEFENDANT:** No ma'am.

**THE COURT:** Have you ever represented yourself in a trial?

**DEFENDANT:** No, ma'am.

**THE COURT:** Do you have any questions about having a lawyer appointed to defend you?

**DEFENDANT:** No, ma'am.

**THE COURT:** Having been advised of your right to counsel and the advantages of having counsel and the disadvantages and the dangers without counsel, knowing those consequence[s] in the event of a conviction, are you certain you do not want me to appoint a lawyer for you?

**DEFENDANT:** Yes, ma'am.

**THE COURT:** If I do allow you to represent yourself and you request it, I could have the assistant public defender act as standby counsel. He or she would be available to you if you have any question[s] during the course of these proceedings. Would you like standby counsel?

**DEFENDANT:** No ma'am.

In order to further review the evaluations and make an informed decision, the

trial court rescheduled the matter. Thereafter, Kendle withdrew his request to represent himself,[2] and the trial court ordered additional competency evaluations. In the interim, the trial court honored Kendle's insistence that his privately retained counsel be discharged, and appointed Jorge Viera from the Office of Regional

---

[2]The record reflects that Kendle withdrew his request to proceed *pro se* during a hearing on April 30, 2014, while at the same time refusing to answer any of the trial court's questions. Instead, indicating that he would no longer participate in the proceedings, which he called "a charade."

Counsel to represent Kendle.[3]  On November 13, 2014, the trial court concluded that Kendle was incompetent to proceed, but a few months later, on March 3, 2015, Kendle was again restored to competency.

**B. The March 6, 2015 Faretta Inquiry**

Having found that Kendle was competent to proceed, the trial court conducted another Faretta inquiry on March 6, 2015.  The colloquy was very similar to that which took place on April 4, 2014.  The trial court again inquired as to Kendle's background, his education, and lack of legal training.  The trial court again confirmed that Kendle had no prior history of mental illness, was not currently taking any medication, and was not under the influence of drugs or alcohol.  The trial court also confirmed that Kendle had not been threatened, or advised against the use of an attorney. Among other things, the trial court went over the seriousness of the charges, the potential penalties, and the consequences of an adjudication of guilt.  The trial court also reviewed with Kendle the advantages of having an attorney, and the disadvantages of self-representation.

Specifically, the trial court emphasized that a lawyer could be of assistance with witness preparation, direct-examination, cross-examination, raising objections, introducing evidence, as well as providing counsel during plea hearings and/or sentencing hearings.  Upon questioning by the trial court, Kendle also

---

[3]Attorney Viera was appointed due to a conflict with the Public Defender's Office.

confirmed his independent knowledge and understanding of the various different types of witnesses, i.e., fact, character, and expert witnesses.

The trial court also reminded Kendle that counsel was available to him free of charge. Just as with the prior <u>Faretta</u> inquiry, Kendle confirmed his understanding following each question posed by the trial court.

Thereafter, the trial court, with the assistance of the Assistant State Attorney, explained to Kendle the possibility that he could receive a sentence of life imprisonment with minimum mandatory penalties.

> **THE COURT:** Okay. Go over those minimum mandatories.
>
> **MS. PEARSON:** Well, because of the fact that a firearm was used and discharged, and caused great bodily injury as well as death in this case, he's facing the 25-year minimum mandatory to life on each of those counts.
>
> **THE COURT:** Okay. And she just wanted to put on the record [the] minimum mandatory sentences that you would be facing in the event that you are found guilty. Do you understand that?
>
> **DEFENDANT:** Yes, ma'am.
>
> **MS. PEARSON:** On each count.
>
> **THE COURT:** And understanding that, you still wish to proceed –
>
> **DEFENDANT:** Yes, ma'am.

Kendle again reiterated his request to proceed *pro se*; the trial court concluded that Kendle had made a knowing and intelligent waiver of his right to counsel; and after Kendle expressed his desire to discharge attorney Viera, the trial court, over

19

Kendle's objection, appointed new stand-by counsel.

**C.** **The May 5, 2015 Faretta Inquiry**

On May 5, 2015, the trial court conducted yet another <u>Faretta</u> inquiry during a hearing on the State's motion in limine. The colloquy was similar to the ones that took place on April 4, 2014 and March 6, 2015. Specifically, the trial court reiterated that Kendle had the right to an appointed lawyer free of charge. The trial court reminded Kendle that he had no legal training, that he was unfamiliar with the rules of evidence, and that a lawyer with knowledge of case law and the rules of evidence would be beneficial in arguing his "stand your ground" motion, subpoenaing witnesses, and preserving errors for purposes of appeal. Kendle responded that he understood everything that the trial court had explained, but he still wanted to exercise his constitutional right to represent himself.

Following the colloquy, in the abundance of caution, and because the trial court was concerned that competency evaluations had become stale over time, the trial court ordered new evaluations. The trial court advised Kendle that any failure to cooperate with the evaluations would result in a further delay of the proceedings. The record reflects that Kendle cooperated with the competency evaluations, and on May 22, 2015, the trial court found that Kendle was competent to proceed.

**D.** **The June 5, 2015 and August 13, 2015 Faretta Inquiries**

The trial court conducted another lengthy and detailed <u>Faretta</u> inquiry during a June 5, 2015 status conference. Similar to the earlier inquires, the trial court reviewed Kendle's background, explained the advantages of having counsel, and the disadvantages of self-representation. At the conclusion of the colloquy, the trial court concluded that Kendle had again made a knowing, intelligent, and voluntary waiver of his right to counsel.

The trial court conducted another <u>Faretta</u> hearing a few weeks before trial, on August 13, 2015. The inquiry followed the same format that the trial court had used on prior occasions. Among other things, the trial court reiterated the charges against Kendle, the seriousness of the offenses, and the potential sentences. The trial court also reminded Kendle that he would not be receiving any special treatment simply because he was representing himself. During this inquiry, the trial court questioned Kendle as to why he thought that he could do a better job than a lawyer. In response, Kendle indicated that he felt as though he was better suited to cross-examine witnesses because he was actually present during the events in question. Once again, the trial court concluded that Kendle had made a knowing, intelligent, and voluntary waiver of his right to counsel.

### E. The August 17, 2015 Faretta Inquiry

On August 17, 2015, following an administrative transfer of the case to another judge, the trial judge introduced herself; appointed new stand-by counsel,[4]

21

Abe Bailey; and conducted another detailed <u>Faretta</u> inquiry. The trial court colloquied Kendle on his background, his lack of legal training, the charges, the rules of evidence, the rules of criminal procedure, preserving objections, jury selection, the possible penalties that could be imposed, and the role of stand-by counsel. The trial court also discussed with Kendle the advantages of having an attorney, and strongly urged Kendle to rethink his position. During the inquiry, Kendle noted that the trial court's questions went further than what <u>Faretta</u> requires. Specifically, he stated "I've taken four or five Faretta [h]earings and none of these questions have ever been on a Faretta." In response, the trial court explained that it conducts very thorough inquires. In granting Kendle's request for self-representation, the trial court noted that Kendle was very bright and clearly articulate.

### F. **The August 31, 2015 Faretta Inquiry**

On August 31, 2015, the first day of trial, the trial court conducted yet another <u>Faretta</u> inquiry. During the inquiry, the trial judge colloquied Kendle as it had done in the past, confirming that he was not under the influence of drugs, and that he understood the charges against him, as well as the potential penalties. The trial court reiterated to Kendle again its concern that Kendle had no legal education and that he was unfamiliar with, among other things, the Florida Rules of

---

[4] Prior stand-by counsel, Marla Levenstein, was discharged by the trial court at the August 13, 2015 hearing at Kendle's request.

Evidence, the Florida Rules of Criminal Procedure, the jury selection process, and raising and preserving objections. Kendle responded that he understood all that the trial court had explained to him, but that he still wished to represent himself. The trial court concluded that Kendle was knowingly and voluntarily waiving his right to counsel, reminded Kendle that stand-by counsel was present in the courtroom, and informed Kendle that the court would renew the offer of assistance of counsel with Kendle at each critical stage of the proceedings. Kendle represented himself during the entire trial, and he continued to refuse the assistance of stand-by counsel throughout the proceedings. The jury returned a verdict of guilty on both counts, as charged.

A review of the numerous Faretta inquiries, and the record as a whole, reflects that Kendle is an intelligent and articulate young man. As the trial court noted during post trial proceedings:

> …I'd like to point out that during the course of this trial, and I am saying this for the record, on a number of occasions, Mr. Kendle remembered off the top of his head, without any piece of paper in front of him on the table, which paragraph in the motion in limine that we had addressed that [sic] he was talking about.

> And, in addition, Mr. Kendle, without the assistance of [counsel] did a cross-examination of the one inconsistency that was presented by one witness . . . it was a lady that [worked there] as a waitress [but] she was only there on the night of the shooting to go to the barbeque stand. And she said she was there at 1 o'clock and [Mr. Kendle] said this incident was at 10:45, not 1 o'clock. On his own, he did the impeachment.

23

He represented himself and he knew what he was doing. And the Court is satisfied with all of [its] colloquies.

The record also reflects that the trial court complied with the requirements of

Faretta and rule 3.111(d), and that Kendle knowingly, intelligently, and freely waived his right to be represented by counsel and exercised his right to represent himself. At all times during the proceedings, Kendle reaffirmed his understanding of his right to counsel after being carefully colloquied regarding the difficulties of self-representation and the valuable services provided by counsel. Kendle knew and understood the severity of the charges, and he insisted that his constitutional right to self-representation be honored. Because the trial court's determination that Kendle made a knowing, intelligent, and voluntary waiver of his right to counsel is supported by competent substantial evidence, we affirm on the issue of Kendle's self-representation.

## II. Comments by the Trial Court and the State

Kendle contends that during *voir dire*, the trial court improperly called attention to the possibility that Kendle might exercise his right to remain silent and/or to not put on a defense, and that both the State and the trial court improperly commented on his exercise of his constitutional right to represent himself.

We address each argument in turn.

### A. Comments Regarding Kendle's Right to Remain Silent

It is well settled that a defendant has the constitutional right to not testify against himself in a criminal proceeding. Brown v. State, 771 So. 2d 603, 604 (Fla. 4th DCA 2000) (citing U.S. CONST. amend, V). This constitutional principle is incorporated in Florida Rule of Criminal Procedure 3.250, which prohibits a prosecuting attorney from commenting on a defendant's failure to testify. Rodriguez v. State, 753 So. 2d 29, 37 (Fla. 2000). Thus, "any comment on, or which is fairly susceptible of being interpreted as referring to, a defendant's failure to testify is error and is strongly discouraged." State v. Marshall, 476 So. 2d 150, 153 (Fla. 1985). Such erroneous comments do not, however, require an automatic reversal. State v. DiGuilio, 491 So. 2d 1129, 1137 (Fla. 1986).

In this case, during *voir dire*, the trial court advised the jury of the law regarding Kendle's right to remain silent during the trial, and provided prospective jurors with a cautionary statement that if Kendle chose not to testify, they could not hold it against him. Specifically, the trial court advised the jury as follows:

> **THE COURT:** Okay. Also, in every criminal case the burden of proof is on the State of Florida and it never shifts to the defendant. Does everyone understand that?
>
> **PROSPECTIVE JURY:** Yes.
>
> **THE COURT:** Okay. So, it's the State of Florida that must prove the charges against the defendant beyond a reasonable doubt. They must present the evidence. So, the defendant may choose to participate in this trial by questioning or he may choose to not participate. He has no burden to prove anything to you. Do you understand that?

25

**PROSPECTIVE JURY:** Yes.

**THE COURT:** The burden is on the State of Florida. So, hand-in-hand with that goes the fact that he also has no burden to testify, present evidence, [or] tell his side of the story. He has every right to remain silent and just sit there at that table. Does everyone understand that?

**PROSPECTIVE JURY:** Yes.

After the jury had been sworn, the trial court provided the following cautionary instruction:

> From the exercise of a defendant's right to remain silent, you may not draw any inference of guilt or hold it against him in any way. The fact that a defendant does not take the witness stand must not influence your verdict or your discussions in any manner whatsoever.

At no time during these discussions did the trial court demean or devalue Kendle's right to not testify. We find that the comments and cautionary instructions given in this case, not only fall within the realm of what is permitted, but are also necessary. Without such cautionary instructions, the jurors would be free to infer or speculate that a defendant who does not testify must surely be guilty, otherwise he would take the stand in his own behalf. Andrews v. State, 443 So. 2d 78, 84 (Fla. 1983). The cautionary no-inference instruction's "very purpose is to remove from the jury's deliberations any influence of unspoken adverse inferences." Id. (quoting Lakeside v. Oregon, 435 U.S. 333, 339 (1978)). To the extent that Kendle argues that these comments impermissibly referred to his right

26

to remain silent, we reject this claim.

**B. <u>Comments Regarding Kendle's Right to Self-Representation</u>**

Kendle contends that the trial court and the State infringed upon and undermined his right to represent himself by making inappropriate references to his election to represent himself in the presence of the jury. The comments made by the State are as follows:

> So, in this particular case, as the judge has mentioned, the defendant has chosen to represent himself. He's what is called a pro se defendant. The Constitution allows all of us that right and [it] is something you can choose to do, if you found yourself to be in a situation. Now, the judge is going to hold him to the same standards as an attorney. Okay. And he's going to be held to the same standard as Mr. Winston and myself. So, knowing this, is anyone going to feel sympathy towards him because of the fact that he's not a trained attorney and is being held to the same standard as we are.

> * * *

> Knowing that he's pro se, we still have to prove our case beyond a reasonable doubt. Is anyone going to hold us to a higher standard, sort of like, so we need to level the playing field because of the fact that he's pro se and you're now against an attorney, so you know, this is different?

> * * *

> So, knowing that, knowing all of this, is anyone going to hold us to a higher standard and sort of level the playing field by holding us to a higher standard?

Kendle argues that these questions and comments impermissibly referred to his right to represent himself. However, Kendle failed to object to this line of

27

questioning by the State and, therefore, Kendle's challenges to these comments were not preserved for appeal and he must demonstrate fundamental error. No such error exists here.

Counsel must have an opportunity to ascertain latent or concealed prejudgments or predispositions by prospective jurors. Stano v. State, 473 So. 2d 1282, 1285 (Fla. 1985) (quoting Jones v. State, 378 So. 2d 797, 798 (Fla. 1st DCA 1979)). A juror's competency is determined by identifying any predispositions, bias, or prejudice, and determining whether that juror can "lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the court." Davis v. State, 461 So. 2d 67, 70 (Fla. 1984) (quoting Lusk v. State, 446 So. 2d 1038, 1041 (Fla. 1984)). Here, the prosecutor merely inquired as to whether the jurors would be able to evaluate the evidence, follow the law, and apply the correct burden of proof, despite the fact that Kendle was representing himself. Thus, the State's inquiry presents no error, let alone fundamental error.

Kendle also takes issue with the trial court's following discussion with Kendle in front of the jury, which Kendle claims undermined his right to self-representation:

**MR. KENDLE:** Your Honor, I was gonna make a –

**THE COURT:** Excuse me. Just one moment. Okay. Is there an objection that you're raising, because there [are] no speaking

objections allowed?  Would you like to wait and discuss with me?

**MR. KENDLE:**  No.  Remember the request I suggested?  The request I said I was going to make the last time I was here about the jury?

**THE COURT:**  Let's do this.  Okay.  Right now, Mr. Kendle –

**MR. KENDLE:**  I was going to make the request in front of the jury, not in front of you.  That's what I was going to say.  But if you say we have to wait until the jury is gone, then there's no point.

**THE COURT:**  See, here's the situation.  The way that the jury selection works, okay, which is, again, why I strongly urged you to have a lawyer.

**MR. KENDLE:**  And I'm not.

**THE COURT:**  I get it.  [This] is not your time to ask questions, but your time to ask questions, if you choose to, will be this afternoon.

This exchange took place while the trial judge was addressing the prospective jurors.  Speaking out of turn, Kendle interrupted and asked to address the jury and make a request of the jury.  Although a defendant has a constitutional right to self-representation at trial, Faretta, 422 U.S. at 806, "[t]he right of self-representation is not a license to abuse the dignity of the courtroom.  Neither is it a license to not comply with the relevant rules of procedural and substantive law." Id. (quoting Faretta, 422 U.S. at 834 n.46).  Thus, the trial court "must possess the authority to reasonably control the scope of *voir dire* examination if the trial is to progress in an orderly and expeditious manner."  Allen v. Se-Go Indus., Inc., 510 So. 2d 1097, 1098 (Fla. 3d DCA 1987) (citing Mizell v. New Kingsley Beach, Inc.,

29

122 So. 2d 225, 227 (Fla. 1st DCA 1960)).

We conclude that this isolated unobjected-to comment by the trial court was not fundamental error as it did not deprive Kendle of his right to a fair trial. Rather, it was an attempt by the trial court to control the courtroom and the process following Kendle's insistence on addressing the jury during the court's questioning of the prospective jurors. To the extent that any error occurred, it was *de minimis*.

### CONCLUSION

Because: (1) the record reflects that the trial court's colloquies of Kendle at every critical stage of the proceedings complied with Faretta and rule 3.111(d) and sufficiently advised Kendle of the pitfalls and the difficulties associated with self-representation; (2) the record reflects that Kendle made a knowing and voluntary waiver of representation by counsel and election to represent himself; and (3) neither the State, nor the trial court, committed fundamental error when advising or questioning the jury, we affirm the judgment and sentences imposed in this case.

Affirmed.