# Third District Court of Appeal

## State of Florida

Opinion filed March 31, 2021.
Not final until disposition of timely filed motion for rehearing.

————————————

Nos. 3D18-2583; 3D18-1079; 3D18-1197; 3D18-1492; 3D18-1495; 3D18-1548; 3D18-1549; 3D18-1552; 3D18-1773; 3D18-1906; 3D19-0440
Lower Tribunal No. F15-8755

————————————

**Sir Michael A. Maps,**
Appellant,

vs.

**The State of Florida,**
Appellee.

Appeals from the Circuit Court for Miami-Dade County, Diane V. Ward, Judge.

Carlos J. Martinez, Public Defender, and Jonathan Greenberg and James Odell, Assistant Public Defenders, for appellant.

Ashley Moody, Attorney General, and Richard L. Polin, Assistant Attorney General, for appellee.

Before FERNANDEZ, HENDON and LOBREE, JJ.

LOBREE, J.

In these consolidated appeals, Sir Michael A. Maps ("Maps"), a

defendant who represented himself at his jury trial, challenges his convictions and sentences for two counts of sexual battery with the threatened use of a deadly weapon (firearm) and/or the use of actual physical force likely to cause serious personal injury. We affirm on all issues but write to address Maps' contention that he is entitled to a new trial on the basis that the trial court failed to conduct an adequate Faretta[1] inquiry prior to allowing him to waive his right to counsel and represent himself at trial.[2]

Facts and Procedural Background

The underlying offenses for which Maps was charged occurred in April 1989. Maps' arrest about twenty-six years later was a result of a match in the Combined DNA Index System. Maps was appointed a series of attorneys to represent him, but he was dissatisfied with most, if not all, of them.[3] He also made several requests to waive his right to be represented by counsel. Maps ultimately proceeded pro se throughout the pretrial proceedings and at trial.

---

[1] Faretta v. California, 422 U.S. 806 (1975).

[2] These cases were initially filed pro se by Maps, who filed various briefs and petitions related to his conviction before consolidation was ordered. This court appointed counsel to represent Maps, who raised two issues for our consideration and declined to adopt the remaining issues raised by Maps.

[3] As a result, the trial court conducted several hearings pursuant to Nelson v. State, 274 So. 2d 256 (Fla. 4th DCA 1973).

2

Of relevance here, Maps expressed a desire to waive his right to counsel and represent himself at the January 31, 2018 hearing on a demand for speedy trial and several pending motions he filed pro se while represented by counsel. The lower court asked Maps a series of questions to ensure he understood the benefits of counsel and consequences and risks of self-representation, addressed the severity of charges against Maps, including possible penalties, and inquired into his competency. Maps was 63 years old and had completed four years of college and about one and a half years of law school. He had never suffered from mental illness. Based on Maps' answers, the court determined that he knowingly, intelligently, and voluntarily waived his right to counsel, and allowed him to proceed pro se and address his pending motions. The court also appointed standby counsel for him. As the court was about to start jury selection to honor Maps' demand for speedy trial, Maps changed his mind about self-representation. Maps asked the court to reappoint his former attorney to represent him. After admonishing Maps about "playing games," the court granted his request. The attorney then successfully moved for a trial continuance.

Just days later, Maps filed a motion seeking to "retract" the appointment of counsel and reasserting his desire to represent himself. At the February 12, 2018 hearing on the motion, the court discharged the

3

appointed attorney without repeating its admonishments on the dangers of self-representation, as it believed there was no need for this in light of the last hearing at which Maps was fully informed of these risks, and there had been no change in circumstances.

The court once again admonished Maps about "playing games" and reappointed standby counsel for him. Maps eventually sought to have his standby counsel removed as well. After rejecting the trial court's renewed offer of assistance of counsel at the outset of trial, he represented himself at his trial without any assistance. The jury found Maps guilty as charged. At the sentencing hearing, Maps likewise declined the court's renewed offer of counsel and elected to remain pro se. He was sentenced to life on both counts, to run concurrently. This appeal ensued.

<u>Analysis</u>

Maps argues that the trial court's failure to readvise him of the perils of self-representation when he reasserted his desire to waive his right to counsel at the February 12, 2018 hearing entitles him to a new trial. We review a trial court's handling of a request for self-representation for an abuse of discretion, <u>see</u> <u>McCray v. State</u>, 71 So. 3d 848, 864 (Fla. 2011), and reject this contention on this record.

Subject to some limitations, a person accused of a crime has the right to conduct his own defense. See Faretta, 422 U.S. at 821 ("The Sixth Amendment. . . implies a right of self-representation."). Once an accused unequivocally chooses to avail himself or herself of this right and waive the assistance of counsel, the trial court must inquire of the accused to ensure the waiver is knowing, intelligent, and voluntary (a "Faretta inquiry"). See Tennis v. State, 997 So. 2d 375, 378 (Fla. 2008); Kendle v. State, 255 So. 3d 400, 403-04 (Fla. 3d DCA 2018) ("[A]n accused has the right to represent himself so long as his waiver of his right to counsel is knowingly and intelligently made."). The court must determine that the accused is "aware of what he or she is doing, and [that] his or her choice [is] made with eyes open." Kendle, 255 So. 3d at 404. "The competence that is required of a defendant seeking to waive his right to counsel is the competence to waive the right, not the competence to represent himself." Id. (emphasis removed).

The determination of whether a defendant's waiver is knowing, intelligent, and voluntary depends on the facts and the circumstances of a given case. See Hooker v. State, 152 So. 3d 799, 801 (Fla. 4th DCA 2014). Generally, the trial court must inquire about the defendant's age, education, and legal experience, Potts v. State, 718 So. 2d 757, 760 (Fla. 1998), and warn him or her about "the disadvantages and dangers of self-

5

representation," Fla. R. Crim. P. 3.111(d)(2); see also Waterhouse v. State, 596 So. 2d 1008, 1014 (Fla. 1992). This determination, however, ultimately turns on *the defendant's understanding* of his choices and risks of self-representation. Holley v. Sec'y, Dep't. of Corr., 518 F. App'x. 857, 858 (11th Cir. 2013); see also Rogers v. Singletary, 698 So. 2d 1178, 1181 (Fla. 1996) ("The ultimate test is not the trial court's express advice, but rather the defendant's understanding.") (quoting Fitzpatrick v. Wainwright, 800 F.2d 1057, 1064 (11th Cir. 1986)).

In the present case, Maps concedes that the trial court conducted the required Faretta colloquy and properly concluded that he knowingly, intelligently, and voluntarily waived his right to counsel at the January 31, 2018 hearing. However, he argues that the court was required to repeat its admonishments on the dangers of self-representation before permitting him to discharge his counsel again at the ensuing February 12, 2018 hearing and subsequently to represent himself at trial. In support of his contention, Maps relies on Davis v. State, 10 So. 3d 176 (Fla. 5th DCA 2009). Davis, however, does not aid Maps.

There, the defendant violated his community control after his release from imprisonment following his convictions for illegally dumping litter and maintaining a public nuisance. Id. at 177. At the revocation hearing, he

expressed a desire to represent himself, and, following a <u>Faretta</u> inquiry, he was permitted to do so. <u>Id.</u> The community control was reinstated with modified the conditions, which the defendant eventually violated as well. <u>Id.</u> At the subsequent revocation hearing, he again informed the court he wished to represent himself, which the court allowed without conducting a new <u>Faretta</u> inquiry. <u>Id.</u> at 177-78. While the Fifth District found the court's failure to repeat the admonishments reversible error, it also noted it was unable to determine whether the court's <u>Faretta</u> inquiry in the earlier revocation proceedings was sufficient to excuse the failure, as the record on appeal contained *no transcript of that inquiry*. <u>Id.</u> at 179, 179 n.2. The court, however, implied it likely would had been insufficient even if it had, as the subsequent revocation proceeding was based on *new charges*. <u>See</u> <u>id.</u> at 179 n.2.

By contrast, in this case, the January 31, 2018 hearing and the February 12, 2018 hearing were both part of the same pretrial stage of the proceedings, and the record in this case does indeed contain the transcript of the earlier hearing, at which the trial court conducted lengthy and adequate <u>Faretta </u>colloquy prior to finding Maps' decision to represent himself knowing, intelligent, and voluntary. Further, as the State correctly maintains, courts have recognized that in some circumstances, a court's decision to forgo a

7

full <u>Faretta</u> colloquy prior to accepting a defendant's waiver of the right to counsel might not amount to error if *the record as a whole* demonstrates that the defendant was well aware of his rights and made a knowing, intelligent, and voluntary election to represent himself. <u>See</u> <u>Waterhouse</u>, 596 So. 2d at 1014; <u>see also</u> <u>United States v. Bisong</u>, 645 F. 3d 384, 393-95 (D.C. Cir. 2011) (finding that district court was not required to repeat its prior admonishments on dangers of self-representation where record established that defendant was adequately informed of these risks four months earlier); <u>Islam v. Miller</u>, 166 F.3d 1200 (2d Cir. 1998) (unpublished) (rejecting defendant's contention that judge was obligated to conduct second <u>Faretta</u> colloquy after defendant abandoned his original request to deliver closing argument, as record indicated he understood his rights and his final decision to deliver summation was made knowingly and intelligently); <u>United States v. Tracy</u>, 12 F.3d 1186, 1192-94 (2d Cir. 1993) (finding no error where court allowed defendant to represent himself at trial but did not repeat all of its advice given to him at suppression hearing conducted three weeks earlier, as "record indicate[d] that [he] understood his rights and was capable of making a knowing and intelligent decision to represent himself").

In this case, based on the careful review of the record before us, we likewise cannot say that the court erred in failing to perform another inquiry

8

into Maps' waiver of the right to be represented by counsel. It is undisputed that the initial waiver on January 31, 2018 was made knowingly, intelligently, and voluntarily, there were no changes in the intervening circumstances between the original waiver of counsel and the renewed waiver on February 12, 2018, and nothing in the record shows that Maps' brief change of mind in any way affected his understanding of his rights, the charges and possible penalties he was facing, or the risks of self-representation. See Green v. Grounds, No. CV 11–2722–JST(E), 2011 WL 5118783, at *8 (C.D. Cal. Oct. 26, 2011) (court's failure to obtain renewed waiver of right to counsel prior to sentencing did not violate Sixth Amendment where initial waiver was knowing and voluntary and temporary relinquishment of defendant's Faretta rights for purposes of appeal did not vitiate his understanding of charges, possible penalties, or dangers of self-representation); cf. United States v. Modena, 302 F.3d 626, 630-31 (6th Cir. 2002) (holding that where defendant initially chose to waive counsel following adequate Faretta colloquy, later sent letter to court requesting counsel, but thereafter withdrew his request, his "interim change of heart" regarding his initial election to waive counsel did not require a new Faretta inquiry at subsequent pretrial conference at which he reiterated his desire to represent himself).

The record here demonstrates that Maps, made well aware of his rights, the nature of the charges against him, the possible penalties, and the consequences and dangers of self-representation, consciously and adamantly elected to discharge his counsel and represent himself at trial, thus leaving no doubt that he knew what he was doing and that his choice to represent himself was made "with eyes open." See Kendle, 255 So. 3d at 404. We also note that the offer of assistance of counsel was renewed to Maps at each subsequent stage of the proceedings at which he appeared without counsel, see Fla. R. Crim. P. 3.111(d)(5) (providing that "[i]f a waiver is accepted at any stage of the proceedings, the offer of assistance of counsel shall be renewed by the court at each subsequent stage of the proceedings at which the defendant appears without counsel"), but declined. Thus, under the circumstances of this case, we discern no error in the trial court's allowing Maps to represent himself at trial and affirm.

Affirmed.